## NILES–BEMENT–POND COMPANY *v.* IRON MOULDERS UNION LOCAL NO. 68 ET AL.

### APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 69.  Argued October 22, 1920.—Decided November 8, 1920.

In a suit by a corporation, a citizen of one State, against another corporation, of another State, and its former employees and their labor unions, wherein the plaintiff, praying no relief against the defendant corporation, sought to enjoin the other defendants from molesting the workmen employed by that corporation and thereby delaying or preventing the performance of contracts with the Government for war supplies entered into by the plaintiff and by it turned over to the defendant corporation for manufacture and delivery, and wherein it appeared that the defendant corporation was subject to the control of the plaintiff through majority stock ownership and through the identity of some of their officers and directors,—

*Held:* (1) That the plaintiff's right, if any, was a right to protect the contract between the defendant corporation and its workmen from the interference complained of; that the defendant corporation was an indispensable party to the controversy, and that, having no interest in conflict with the plaintiff's, it must be aligned as a plaintiff in determining whether the District Court had jurisdiction through diverse citizenship (p. 80); (2) that certain allegations of the bill that the Government contracts had priority under the National Defense Act, and involved interstate commerce, were insufficient to render the suit one arising under the laws of the United States. P. 82.

258 Fed. Rep. 408, affirmed.

THE case is stated in the opinion.

*Mr. Lawrence Maxwell* and *Mr. Murray Seasongood* for appellant and petitioner.

*Mr. W. B. Rubin* and *Mr. Robert J. Shank* for appellees and respondents.

Mr. Justice Clarke delivered the opinion of the court.

The controversy involved in this suit originated in a strike by employees of the defendant The Niles Tool Works Company, hereinafter designated the Tool Company, and the sole question presented for decision is one of jurisdiction.

The petitioner, a corporation of New Jersey, filed its bill in the District Court for the Southern District of Ohio, making the Tool Company, an Ohio corporation, several local labor unions and many of the striking employees of the Tool Company (in the bill and hereinafter designated "former employees") parties defendant, it being averred that all of the defendants were citizens of Ohio and residents of the Southern District. The jurisdiction of the court was thus invoked on the ground of diverse citizenship.

The relief prayed for was an injunction, restraining the striking former employees of the Tool Company from molesting workmen employed by that company to take their places, upon the ground that petitioner had contracts with the Tool Company the performance of which was being delayed by such interference. No case was stated, or relief asked for, against the Tool Company.

The District Court overruled a motion to dismiss for want of jurisdiction and granted a preliminary injunction as prayed for, but, on appeal, the Circuit Court of Appeals found: that the Tool Company was so essentially a subsidiary of the petitioner, and its interest in the controversy was so certainly on the same side, that it should be treated as a plaintiff; that any decision of the case must necessarily so involve rights of the Tool Company as to render it an indispensable party to the case; and that giving that company its proper classification as a plaintiff resulted in the disappearance of the jurisdictional diversity of citizenship and required the dismissal of the bill, which was

ordered. The case was brought here for review by writ of certiorari.

The facts essential to be considered, which were stipulated or sufficiently proved on the hearing of the application for an injunction, may be epitomized as follows:

The petitioner was a corporation of New Jersey, the defendant Tool Company a corporation of Ohio, the petitioner owned a controlling interest in the capital stock of the Tool Company, and the same men were president and vice president, respectively, of both companies. The president was invested with authority to fix prices for the two companies, three of the five directors of the Tool Company were directors of the petitioner, and more than ninety-five per cent. of the business of that company was obtained through the petitioner, acting as its general sales agent. The customary mode of transacting business between the two companies was for the petitioner to make contracts for machinery, which it passed to the Tool Company for manufacture and delivery.

Before the filing of the bill the petitioner had entered into many contracts with the United States Government to furnish it, as quickly as possible, with machinery, tools and equipment for arsenals and for navy and ship yards, all of which contracts were necessary for the successful prosecution of the war and were to be given priority over other work. These contracts had been passed to the Tool Company for manufacture, the petitioner remaining liable for their performance. It was averred and sufficiently proved, that the defendants other than the Tool Company had conspired together, for the purpose of hindering, delaying and preventing the petitioner from performing, through the Tool Company, the contracts thus obtained by it from the Government and for the purpose of intimidating workmen in the employ of the Tool Company by threats, violence and coercion, when going to and from their places of work and when at their homes.

Such defendants, assembled about the plant of the Tool Company, had at times by threats and violence prevented employees from entering its factory to work, and had threatened to prevent, and unless restrained would have prevented that company from freely carrying forward its business and thereby the petitioner from fulfilling its contracts with the Government and with others.

On this record the questions presented for decision are, Was the Tool Company an indispensable party to the suit, and, properly classified, should it be treated as a plaintiff? If these questions are both answered in the affirmative the decree of the Circuit Court of Appeals must be affirmed, otherwise it must be reversed.

There is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not, but a rule early announced and often applied by this court is sharply applicable to the case at bar. In *Shields* v. *Barrow*, 17 How. 130, 139, this language,— quoted with approval in *Barney* v. *Baltimore City*, 6 Wall. 280, 284, and again in *Waterman* v. *Canal-Louisiana Bank Co.*, 215 U. S. 33, 48,—was used to describe parties so indispensable that a court of equity will not proceed to final decision without them, viz:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

The case we are considering is essentially one on the part of the petitioner to protect from interference by striking former employees of the Tool Company, the contract which that company had with the men employed by it to take their places. Petitioner's claim of right, the validity of which we are not called upon to determine, is rested wholly upon the contract of the Tool Company with its

employees, and the character and construction of that contract of employment must inevitably be passed upon in any decision of the case, and, obviously, if the petitioner should fail in such a suit as this, with the Tool Company not a party, any decree rendered would not prevent a re-litigating of the same questions in the same or in any other proper court, and it would settle nothing.

Thus if the Tool Company be considered as having any corporate existence whatever separate from that of the petitioner, it must have an interest in the controversy, involved in such a case as we have here, of a nature such that a final decree could not be made without affecting that interest and perhaps not without leaving the controversy in a condition wholly inconsistent with that equity which seeks to put an end to litigation by doing complete and final justice, and therefore it must be concluded that it was an indispensable party, within the quoted long established rule.

Plainly, the appellant was not mistaken when it made the Tool Company a party to the suit. But making it a party defendant could not give to the District Court jurisdiction against the objection of another party or over the court's own scrutiny of the record, unless there existed a genuine controversy between it and the plaintiff, the petitioner. Judicial Code, § 24. That there was not, and could not be any substantial controversy, any "collision of interest," between the petitioner and the Tool Company is, of course, obvious from the potential control which the ownership of stock by the former gave it over the latter company, and from the actual control effected by the membership of the boards of directors and by the selection of executive officers of the two companies, which have been described.

Looking, as the court must, beyond the pleadings, and arranging the parties according to their real interest in the dispute involved in the case, *Dawson* v. *Columbia Trust*

*Co.*, 197 U. S. 178, 180, *Steele* v. *Culver*, 211 U. S. 26, 29, it is clear that the identity of interest of the Tool Company with the petitioner required that the two be aligned as plaintiffs, and that with them so classified, the case did not present a controversy wholly between citizens of different States, within the jurisdiction of the District Court. *Coal Co.* v. *Blatchford*, 11 Wall. 172; *Hooe* v. *Jamieson*, 166 U. S. 395.

The allegations of the bill that the contracts which the petitioner had with the United States Government were of a character which must be given priority under § 120 of the National Defense Act, approved June 3, 1916 (39 Stat. 166, 213), and that they involved interstate commerce, are much too casual and meager to give serious color to the claim now made that the cause of action asserted is one arising under the laws of the United States. The contention is an afterthought and plainly was not in the mind of the writer of the bill of complaint.

It results that the decree of the Circuit Court of Appeals must be affirmed.

*Appeal dismissed, petition for writ of certiorari granted, and decree of the Circuit Court of Appeals affirmed.*

MR. JUSTICE PITNEY and MR. JUSTICE MCREYNOLDS dissent.