## DETROIT TILE & MOSAIC CO. v. MASON CONTRACTORS' ASS'N et al.

### No. 3383.

District Court, E.. D. Michigan, S. D.

Feb. 21, 1930.

· James K. Nichols, of Detroit, Mich., and Stanley, Horwitz & Kiefer, of Cleveland, Ohio, for plaintiff.

Groesbeck, Sempliner & Kelly, of Detroit, Mich., for defendants.

SIMONS, District Judge.

This is the usual labor injunction bill, alleging unlawful conspiracy to injure the plaintiff, and praying for both temporary and permanent injunctions. Jurisdiction is asserted on the ground of diversity of citizenship, and because of interference with interstate commerce. The plaintiff itself considers the latter ground for jurisdiction relatively unimportant, confident that diversity of citizenship is clearly shown.

We are met at the outset with a challenge to the jurisdiction of the court, and, in order to make a proper determination, it be-

comes necessary to ascertain the status of the parties, their citizenship, and their relation to the controversy. The plaintiff is a Delaware corporation, engaged in the business of selling and installing decorative tile in and about Detroit. The defendants are individuals, all residents and citizens of the Eastern District of Michigan, sued in the customary form of class suit in three classes: (a) The Mason Contractors' Association and the Master Masons' Association are voluntary associations which include substantially all the mason and general contractors of Detroit; (b) the Bricklayers', Masons' and Plasterers' International Union No. 2 is a local labor union whose members are commonly employed by the two mason associations, with whom they have from time to time entered into employment agreements concerning type of work, wages, and working conditions; (c) the Tile and Marble Setters' Local No. 32 is a labor union in the marble and tile setting craft. The members of the two Mason Associations directly employ bricklayers, but no other craft, all other operations on buildings being constructed, and all other crafts being employed, by subcontractors. The plaintiff is such subcontractor, bidding upon and being given from time to time contracts for decorative tile by the members of the two Mason Associations.

The two Mason Associations in 1928 entered into a contract with the Bricklayers' Union governing wages and working conditions for a period beginning May 1, 1928, and ending May 1, 1930. In negotiating the contract, the union demanded, and the Mason Associations refused to include, a provision making it subservient to the rules of the International Organization, which had as an affiliated member Tile and Marble Setters' Local No. 32. The contract was executed without such provision. It provides for bricklaying and stone mason work only, and its only reference to tile is to hollow tile blocks for partition walls, and not to decorative tile. The contract forbids strikes by the Bricklayers' Union. This is but one of many similar contracts entered into between the contracting parties, or their respective predecessors. For a number of years there have been controversies between the parties resulting from the subletting of decorative tile contracts to so-called independent tile contractors, of which the plaintiff is one. Strikes have been called, and other strikes threatened by the bricklayers upon construction jobs where plaintiff or other independent tile contractors have had subcontracts for decorative tile. The purpose of these strikes and threats of strikes is alleged to be the compelling of the general contractor to breach his contract with the independent tile contractor employing open shop tile setters. On the day the bill was signed, the two Mason Associations were endeavoring to reach a decision necessitated by the threat of the Bricklayers' Union officers to call strikes against the general contractors, unless the contractors agreed to consent to a modification of the contract permitting secondary boycott strikes. One of the Mason Associations appeared willing to accede to the demand, the other rejected it. It is charged that the union was instigated in its strike and threats of strike by the Detroit Tile Club, an association of closed shop contractors engaged in the business of setting decorative tile. The Detroit Tile Club is not made a party to the bill of complaint, but there is alleged not only a conspiracy between the defendants, but an interlocking conspiracy between some of the defendants and the members of the Detroit Tile Club. The members of the two Mason Associations (I use the terms of the plaintiff's brief), though unwilling, are being coerced to surrender to the union officers, as they are faced with the ruination of their enterprises as general contractors if such secondary boycott strikes continue. A hearing upon the merits was had, and the case submitted on the record.

In order to determine whether this court has jurisdiction based upon diversity of citizenship, and whether or not the parties are properly aligned as plaintiffs or defendants to make a case cognizable in this Court in the light of section 37 of the Judicial Code of the United States (28 USCA § 80), it becomes necessary to analyze the dispute. The plaintiff has never at any time, so far as the evidence discloses, had any controversy in regard to the subject-matter of the bill with the two Mason Associations. Such controversy as has existed is a controversy between the Mason Associations and the Bricklayers' Union, with the Detroit Tile Club, if we are to believe the allegations and proof, standing in the offing and encouraging the union. All demands of the union and its insistence upon the bricklayers' right to strike in the event of letting of subcontracts to independent tile contractors have been resisted by the Mason Associations. The latter have refused repeatedly to modify their agreement permitting sympathetic strikes or secondary boycotts, and refused to consent to or to be bound by any reservations of the labor unions on that subject.

No benefit could possibly accrue to the members of the Mason Associations by becoming a party to the conspiracy alleged in the bill. There is not disclosed in the evidence, or in the pleadings, any community of interest between the Mason Associations and the unions in respect to the purpose or object of the alleged conspiracy. Their interests have always been diametrically opposed. It is true that there is some evidence that, if the compulsion or duress exerted by the union is continued, some of the members of one of the associations may be forced to avoid entering into contracts with the plaintiff. Are these associations, then, properly aligned as defendants in the action? My understanding is, in the light of recent cases decided by the Circuit Court of Appeals of the Sixth Circuit, and by the Supreme Court of the United States, that the proper test as to whether a party defendant is properly aligned as such, or whether he belongs on the side of the plaintiff, is to be determined by the fact that there is a "collision of interest" between such defendant and the plaintiff, and by an inquiry as to whether there is a substantial controversy between them. Davis et al. v. Henry (C. C. A.) 266 F. 261; Gable et al. v. Vonnegut Machinery Co. et al. (C. C. A.) 274 F. 66; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145. These are all labor injunction cases.

It is urged by the defendants that, far from there being a conspiracy among them of the nature alleged in the bill, there is in fact a conspiracy between the plaintiff and the Mason Associations. It is, of course, unnecessary to determine the existence of such a conspiracy, and perhaps the proofs fall short of establishing it. However, the circumstances relied upon in support of the charge are extremely important and convincing in persuading the court that there is no "collision of interest" and no substantial controversy between the plaintiff and the Mason Associations. Among such circumstances are the following: The members of the Mason Associations, some time before this action was started, were in conference with representatives of the Associated Builders' Employers, an organization having for its purpose the so-called "American Plan" of open shop employment, and that the meeting was arranged for the purpose of deciding what to do in the threatened controversy; that one Pierce Wright, secretary of the Associated Builders' Employers, was kept fully informed as to the controversy with the union; that the files and correspondence of the Mason Associations were turned over to Mr. Wright, and that the Mason Associations passed a resolution pledging the support of their organization to the plaintiff; that the attorney for the Associated Builders' Employers is counsel for the plaintiff in this action; that neither of the Mason Associations has entered an appearance or filed an answer in this suit; and that two of the directors of the said Associated Builders' Employers have filed affidavits on behalf of the plaintiff. In view of the history of the controversy and the circumstances disclosed by the record, it appears to me to be conclusively established that there is no collision of interest and no substantial controversy between the plaintiff and the Mason Association, and it therefore becomes the duty of the court, in following the rule of the cases hereinbefore cited, to align the two Mason Associations on the side of the plaintiff in the controversy. This being done, the requisite diversity of citizenship disappears, and this court is without jurisdiction. It is true that in the case of O'Brien v. Fackenthal, 5 F.(2d) 389, the Court of Appeals indicated that one might in a sense become engaged in a joint conspiracy by being compelled by others to break a contract. However, in that case the party so designated as being in a sense a joint conspirator was not made a party defendant to the bill, nor does it appear that any jurisdictional question was either involved or raised. There is no explanation given as to what is there meant by the terms "in a sense," except as it might there have been considered important in determining an employer-employee relationship.

Upon the question of jurisdiction, there is left only a consideration of the case as one involving interstate commerce. As has already been indicated, no great reliance is placed by the plaintiff upon this ground. It is sufficient, perhaps, to call attention to the discussion on the subject in Gable v. Vonnegut Machinery Co., supra. In that case there was much stronger warrant for inference that the acts complained of in some way affected interstate commerce, but the court there held that the acts did not directly and immediately relate thereto. In the instant case a relation between the challenged unlawful acts and interstate commerce is even more clearly incidental and indirect. Certainly jurisdiction cannot be here sustained on the ground that interstate commerce is in some way directly affected by the alleged unlawful conspiracy.

It is my view that upon neither ground asserted can the jurisdiction of this court be sustained. The bill will have to be dismissed, of necessity carrying with it the temporary restraining order.