**DETROIT TILE & MOSAIC CO. v. MASON CONTRACTORS' ASS'N et al.**

No. 5715.

Circuit Court of Appeals, Sixth Circuit.

April 17, 1931.

MOORMAN, Circuit Judge, dissenting.

H. E. Smoyer and W. K. Stanley, both of Cleveland, Ohio (Fildew & De Gree, of Detroit, Mich., and Stanley, Horwitz & Kiefer, of Cleveland, Ohio, on the brief), for appellant.

George A. Kelly, of Detroit, Mich. (Groesbeck & Kelly, of Detroit, Mich., on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This case at foundation presents the question of the right of union labor to strike, and to announce its intention to strike wherever the given situation may arise, as a means of compelling the employers of labor to adopt the "closed shop" rule in other, though related, trades. The District Court, after realigning the parties in accordance with what was considered their basic or true interests in the underlying subject of the controversy, dismissed the bill for want of federal jurisdiction; such jurisdiction being finally asserted only upon the ground of diversity of citizenship. The complainant appeals. The jurisdictional question only is presented by the briefs.

The complainant is a corporation under the laws of Delaware, engaged as an open shop or nonunion tile contractor in the city of Detroit. The defendants named were of two general classes: (1) Bricklayers', Masons' and Plasterers' International Union No. 2, and its officers, and Marble Mason, Tile Layer, and Terrazzo Workers' Local Union No. 32, and its officers; and (2) Mason Contractors' Association, and its officers, and Master Masons' Association, and its officers. We shall refer to the second class collectively as the mason associations, and to the two unions as the Bricklayers' Union and the Tile Setters' Union. The mason associations were voluntary associations of general and masonry contractors, by whom contracts for supplying and installing decorative tile were sublet upon competitive bids. Their pecuniary interest undoubtedly lay in keeping this craft upon the open shop basis, and especially in the avoidance of strikes upon jobs for which they held the general or masonry contracts. To the latter end they had, over a long period of years, entered into a series of contracts with the bricklayers' local union fixing the terms and conditions of employment, for-

bidding strikes, and requiring that all matters of dispute between the individual members of the mason associations and the union should be settled by arbitration. The contract in force at the inception of this litigation was entered into June 19, 1928, as effective from May 1, 1928, to May 1, 1930.

There is some dispute as to whether this last contract forbade strikes, a reservation being appended by the International Union that it was understood that the agreement would not interfere with the right of the local union to obey all laws and rules of the International Union and the mandates of the executive board. We do not, however, consider it necessary to decide this issue, since the question of realignment depends primarily upon the allegations of the bill and the contentions of the complainant, rather than the ultimate decision of the meritorious question.

The complainant's relationship to members of the mason associations had frequently been that of subcontractor, and was analogous, therefore, to that of an employee. The complainant was not a member of, nor otherwise related to, the masons' associations. The bill alleges, and the proofs tend to support the claims, that, at the time of filing its bill, complainant was engaged in the performance of certain contracts theretofore entered into for the installation of decorative tile; that, notwithstanding its contract to the contrary, and out of sympathy for or co-operation with the Tile Setters' Union, the Bricklayers' Union, its officers and members, were conspiring among themselves and with the mason associations to boycott the complainant and destroy its established business; and that unless restrained by order of the court, the mason associations would be coerced, by strikes and threats of strikes, into modifying their agreement with the Bricklayers' Union, so as to permit sympathetic strikes and compel the employment of only union tile setters; and the members of said associations would be coerced into breaches of the contracts upon which complainant was then engaged. The prayer was, in substance, for an injunction against the continuance or enlargement of the alleged boycott, against any abrogation or modification of the contract between the mason associations and the Bricklayers' Union, whereby sympathetic strikes would be permitted or members of the mason associations coerced into breaching their existing contracts with complainant, and generally against all strikes, publications, threats, coercion, and like action, adapted to prevent the letting of contracts to complain-

ant and injure it in the conduct of its business.

■ Under these circumstances we are of the opinion that the two mason associations were improperly realigned with complainant. The gravaman of the complaint is the maintenance of a secondary boycott and of an unlawful conspiracy or combination to injure complainant in its business. Upon this phase of the case obviously the mason associations are not indispensable parties whether they were or were not shown to be parties to the conspiracy. If parties to the conspiracy, they are properly made defendants. If not parties to the conspiracy, then relief may be granted or refused to complainant without affecting their rights.

Ancillary to relief from the maintenance of this conspiracy and boycott, and as a means to that end, complainant asks an injunction restraining any modification of the agreement between the Bricklayers' Union and the mason associations, or any breach, upon compulsion of the Bricklayers' Union, of the contracts which complainant was then performing. In this aspect of the case the mason associations were proper parties, possibly indispensable parties, but, since it was sought to have the injunction operative against the mason associations, in maintaining the status quo under the contracts, they must be regarded as parties defendant. It is asserted by complainant that a modification of the one contract, or a breach of the others, would constitute an important step in the maintenance, culmination, and effectiveness of the conspiracy, and that the mason associations may be compelled, albeit unwillingly, to lend this assistance to the Bricklayers' Union in the accomplishment of its allegedly unlawful purpose. The substance of this contention is that the mason associations would then become parties to a joint conspiracy. Cf. O'Brien v. Fackenthal, 5 F. (2d) 389, 390 (C. C. A. 6). The relief sought is preventive of this contingency. In such case, the fact that the mason associations were desirous of retaining the open shop principle, or so-called American plan, for the employment of tile setters, or that their members inclined not willingly to breach their contracts with complainant, would not affect the status of the associations as defendants. A desire or willingness to submit to the right, and abstain from the commission of a wrong, is wholly immaterial upon the question of realignment. The essential question is whether the complainant is seeking to enforce, in whole or in part, a right of the defendant

sought to be realigned as a complainant; and, if so, whether such defendant is an indispensable party so as, of necessity, to destroy the diversity of citizenship.

Thus in Niles–Bement–Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145, the union strikers were employees of the Niles Tool Works Company, a subsidiary of the complainant. The relief sought was the enforcement of the rights of the Niles Tool Works Company in its relationship as an employer of labor. Neither boycott nor conspiracy as against the Niles-Bement-Pond Company was involved. It was there rightly held that the Niles Tool Works Company was an indispensable party and, since the complainant was seeking to enforce the rights of its subsidiary, the latter must be aligned with it as a complainant. This decision is without application to the present case.

■ As we have already said, the briefs of counsel are limited to the jurisdictional question. The narrative statement of the evidence purports to include only "so much thereof as is necessary for a determination of the issues by the Appellate Court." The court below did not decide the meritorious question. Under such circumstances we are constrained to adopt the same course and to abstain from deciding that which was not fully presented to us, nor decided below, viz., whether it is lawful for a labor union to compel the unionization of all crafts of the building trades by sympathetic strikes, or by threatening to strike if nonunion men are employed upon any branch of the work. Restraint of interstate commerce does not here appear, as it did in Bedford Cut Stone Co. v. Stone Cutters' Ass'n, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791; Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; Loewe v. Lawlor, 208 U. S. 274, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; and Aeolian Co. v. Fischer, 40 F. (2d) 189 (C. C. A. 2), and the question of inducing a breach of the contracts already held by complainant (compare Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461) may have become moot by this time. But, conceding both these facts as possibilities, there must remain in the case the question whether the methods used by the unions to compel the introduction of the closed shop into all branches of the building trades are legal, as being justified by the end, or are illegal as regards the

complainant, as constituting an unlawful conspiracy or a secondary boycott. See Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Beck v. Railway Teamsters' Protective Union, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421, and cases there cited. Except as a review of prior decisions, the cases of United Mine Workers v. Coronado Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, United Leather Workers' v. Herkert, 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566, and Industrial Ass'n v. U. S., 268 U. S. 64, 45 S. Ct. 403, 69 L. Ed. 849, do not touch the issue here remaining, for in each the decision was predicated, not upon the legality of the means used, but upon the absence of restraint of interstate commerce. The effect of section 20 of the Clayton Act is also to be considered. In brief, the importance and complexity of the questions arising upon a consideration of the merits are so great as not to permit a decision except on full presentation and after determination by the District Court.

Reversed and remanded.

MOORMAN, Circuit Judge (dissenting).

I think this case is ruled by Iron Moulders' Union v. Niles-Bement-Pond Co. (C. C. A.) 258 F. 408; Id., 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145. The realignment was ordered by the trial court, not upon the averments of the bill, but upon the proofs. These proofs show that the interests of the mason associations coincide with those of the plaintiff. The object of this suit is to restrain the labor organizations and their officers from preventing the members of these associations from employing nonunion labor in the craft to which the plaintiff belongs. Further than that plaintiff has no interest in the threatened strikes or the contract between the associations and their codefendants. This, too, is the sole interest of the associations. The members of the associations have no controversy with the plaintiff, have never broken any contract with it, and have never agreed not to employ it. A majority, if not all of them, are members of the Associated Builders' Employers, an organization having for its object the advancement of the open shop. The secretary of this latter organization encouraged, if he did not cause, the filing of this suit. Certainly he has actively participated in it in behalf of the plaintiff. One of the associations, through its executive committee, passed a resolution directing its secretary to give to the secretary of the Builders' Employers all "the assistance I possibly could give him in this lawsuit." Counsel for the Builders' Employers is attorney for the plaintiff in this action; two of its directors have filed affidavits on behalf of the plaintiff; and neither of the associations has entered an appearance to or filed answer in the case. The interests of the associations thus not only plainly lie, but are actively employed, it seems to me, with the plaintiff.

Whether, in the circumstances indicated, the associations are indispensable parties depends upon whether a court of equity ought to proceed to a final decision without them. So far as it is sought to prevent the unions from breaking their present contract with the associations, the only rights that the plaintiff has are incidental to those of the associations. A court of equity, seeking "to put an end to litigation by doing complete and final justice," ought not, it seems to me, adjudicate those rights without requiring the associations to be made parties to the litigation. The rights of the associations are also basically involved in the threatened coercion of the associations into making contracts that may injure the plaintiff. Thus in each instance the subject-matter of the litigation relates primarily to contract rights of the associations. Those rights ought to be adjudicated so as to bind all parties concerned, and in my opinion that cannot be done, at least as to the existing contract, without the presence of the associations. I think the decree should be affirmed.