## IOWA SOUTHERN UTILITIES CO. v. TOWN OF LAMONI et al.

### No. 41116.

District Court, S. D. Iowa, Central Division. Aug. 6, 1935.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, Iowa, for plaintiff.

George A. Rice, of Mapelton, Iowa, for defendant Town.

DEWEY, District Judge.

The Iowa Southern Utilities Company, a corporation, brings this action in equity seeking to enjoin the town of Lamoni, Iowa, and its executive officers, who are made defendants, from contracting with the Public Works Administration to secure funds to finance a municipal power and light plant. The town is seeking to so construct and establish such a plant and distribution system with the aid of federal funds to be loaned and granted by the Federal Emergency Administration of Public Works. None of the officers of the government are made parties defendant.

The complaint is that the officers of the Federal Emergency Administration of Public Works are without power or authority to make the grant or loan for the erection of this municipally owned plant, that the town through its officers are acting beyond their power and authority in endeavoring to contract with the Public Works Administration for the procuring of such loan and grant, and that such a contract is illegal and its consummation will result in unlawful competition to complainant's injury.

Complainant does not own an electric power and light plant in the town of Lamoni, Iowa, but distributes such electricity in a great number of the towns and cities in the southern part of Iowa and has a large general power and distributing system. It maintains a local distributing system, including electric light poles, etc., in the town of Lamoni, which it alleges are of the value of about $25,000. It formerly had a franchise from the town to operate therein, but such franchise has expired. It claims that if the contemplated municipally owned electrical project is permitted to be established, complainant will be compelled to abandon its distribution and street lighting system in the town and this will result in a direct pecuniary loss of $25,000.

More specifically, the grounds upon which it is claimed the municipality proposes to illegally obstruct and interfere with the rights of the complainant are:

First, that the National Industrial Recovery Act, section 701, title 15, U. S. C. (15 USCA § 701), does not authorize the Public Works Administration to grant or loan funds of the United States for this purpose.

Second, that the project of the municipality has no relation to interstate commerce, does not relieve unemployment, or reach any of the objects intended to be attained by the National Industrial Recovery Act and to loan or grant to the town money as contemplated would duplicate and destroy the value of complainant's property without due process of law and would amount to the taking of private property for a public use without just compensation.

Third, that the Administrator of Public Works has not prepared a comprehensive program of public works as required by section 202 of the National Industrial Recovery Act (40 USCA § 402), and loans or grants without such program are ultra vires and void.

Fourth, that the extension of such aid to the town is without the limitation of the constitutional power of Congress, and in so far as the National Industrial Recovery Act purports to authorize the use of public moneys for that purpose, it is ultra vires and void.

Fifth, that the provisions of section 202 and section 203 of title 2 of the National Industrial Recovery Act (40 USCA §§ 402, 403) are invalid for the reason that they involve an unlawful delegation of legislative power by the Congress to the Public Works Administration.

These specific complaints and perhaps others of a like nature set up in the bill are all directed at the power or authority of the Public Works Administration to loan or grant money for the completion of the proposed project by the municipality.

Other charges of illegality of the proceedings have reference to the actions, power, and authority of the town to enter into a contract with the Public Works Administration in the loaning or granting of the money for the purposes intended.

The town proposes to construct a municipally owned electric light and power plant and distribution system therein under the authority granted by the Legislature of the State of Iowa, under an

act locally known as the "Simmer Act," now sections 6134-d1 to 6134-d7, inclusive, Code of Iowa, 1931, providing for the authorization to the towns, after being authorized by the electorate, to construct and maintain an electric light and power plant and distribution system therein, payable entirely out of the net earnings of the property. No particular complaint is alleged as against the actions of the town in their proceedings so far had in endeavoring to establish, construct, and maintain such a plant within the town under this act; the objection and claim of illegality being directed solely as against the attempt on the part of the town to borrow the money from the Public Works Administration, and in accepting the grant for the promotion of public works under the National Industrial Recovery Act.

And the charges in the complaint, in so far as the town is concerned as acting illegally and injuriously to the property rights of the complainant corporation, are:

First, that the town of Lamoni and its officers are without authority under the Constitution and statutes of Iowa to construct a municipally owned electric light and power establishment and pay for the same with funds donated by the United States, as no such authority is expressly delegated to it by the statutes of the state.

Second, that the questions submitted to and voted upon by the legal electors of the town provided only for the establishment of an electric power and light plant "to be paid for solely and only out of the net earnings of said plant," and that the voters were not advised and did not vote upon the question of whether the town should construct and maintain the power plant and pay for the same from funds obtained from a loan and partly from a grant of federal funds from the United States of America.

Third, that the contract entered into or to be entered into between the town of Lamoni and the Public Works Administration requires that as a part of the consideration of financing the project by the Federal Emergency Administration of Public Works the town surrender to the said administration its powers, functions, and discretions vested by the laws of the state, and that by reason thereof said contract is ultra vires and void, as the town is without legal authority or right to delegate any of its powers, functions, or discretions vested by the laws of the state of Iowa.

The proposition submitted to the electors of the town of Lamoni, Iowa, with reference to the establishment and operation of an electric power plant and distribution system, and which was voted upon favorably by such electors, is as follows: "Shall the Town of Lamoni, Iowa, be empowered and authorized to establish, erect, maintain and operate a municipal electric light and power plant, with all the necessary poles, wires, machinery, apparatus, buildings, site, and other requisites for such plant at a maximum expenditure for the establishment thereof not exceeding the sum of $100,000; said plant to be paid for solely and only out of the earnings of said plant, without the incurring of any indebtedness therefor by said Town of Lamoni, Iowa?"

The town first entered into a contract with a local bond company to purchase $77,000 of the bonds of the town secured by revenue bonds in that amount but payable solely out of the earnings of the town from the proposed plant and to accept a donation from the Public Works Administration of $22,900 to aid in the financing and construction of the electric light and power plant. Later the town through due procedure proposed to and was about to enter into a contract with the Public Works Administration whereby it will accept the loan of $77,000 secured as above, and the Public Works Administration will grant to the town the above-named sum for the aid of the project. It is to restrain the completion and entering into of this contract that these proceedings were brought, and as the contract or the sale of the bonds to the government is about to be consummated, the plaintiff here applied for and was granted a temporary restraining order until the matter could be heard in open court on the application for the temporary injunction. Such restraining order was issued on June 27, 1935, and the hearing on the temporary injunction was set for and was heard and submitted to the court for determination in open court at Des Moines, Iowa, on the 19th day of July, 1935.

■ The question here is solely as to whether or not, under the facts set forth in the application and the answer of the

defendant, the court should issue the temporary injunction pending the hearing on the merits. No evidence was introduced at the hearing other than the facts set forth in the pleadings, which were introduced as affidavits, and the court therefore, in considering the question of whether a temporary injunction should issue, adopts and considers as established facts the well-pleaded facts set forth in those instruments.

■ I take it that a temporary injunction should issue in the event the facts or the law raise a serious doubt or require for a determination that the cause be continued in status quo until a full and complete hearing can be had and decision rendered upon the facts as therein introduced in evidence. Despite this broad discretionary authority of the court, I do not find here under the facts and the law enough to warrant the court in exercising its discretion to restrain the defendant town and its officers from entering into the proposed contract.

■ I am very clear that the challenge to the constitutionality of the National Industrial Recovery Act, the power and authority of the Public Works Administration to enter into the contract and make the loan and grant, and the other questions raised as to its power and authority, cannot be here sustained by the complainant for several reasons:

First, the Supreme Court of the United States has directly held that a taxpayer cannot complain of the actions of the town, unless his or its property rights are directly affected by the challenged act or conduct on the part of the officers of the town. Com. of Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078. And conditions similar to the one here presented have been ably considered and determined by eminent judges of this circuit adverse to the rights of the complainant to raise these questions in a suit of this kind. Mo. Utilities Co. v. City of California (D. C.) 8 F. Supp. 454; Ark.-Mo. Power Co. v. City of Kennett, by Judge Faris (E. D. of Mo.), decided Feb. 25, 1935;[1] Mo. Public Service Co. v. City of Trenton, by Judge Otis (W. D. of Mo.).[2]

■ Second, as suggested by the court at the time of the hearing, questions as to the legality and authority of the Public Works Administration to enter into the contract and to make these loans and grants cannot be determined in this suit, as no officer or agent of the United States government is made a party to the suit. Counsel for complainant assured the court that he could establish the right of the complainant to have the issues determined without any of the officers of the Public Works Administration being made parties, and I have carefully examined the cases relied upon by complainant. Russell v. Clarke's Executors, 7 Cranch, 69, 98, 3 L. Ed. 271; Barney v. Baltimore City, 6 Wall. 280, 284, 18 L. Ed. 825; Mallow v. Hinde, 12 Wheat. 193, 6 L. Ed. 599; Ex parte Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Scranton v. Wheeler, 179 U. S. 141, 21 S. Ct. 48, 45 L. Ed. 126; Hopkins v. Clemson Agri. College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Public Service Co. v. Corboy, 250 U. S. 153, 159, 39 S. Ct. 440, 63 L. Ed. 905; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145; General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244; State of Colorado v. Toll, 268 U. S. 228, 45 S. Ct. 505, 69 L. Ed. 927; Work, Secretary, v. State of Louisiana, 269 U. S. 250, 46 S. Ct. 92, 70 L. Ed. 259; Silver King Coalition Mines Co. v. Silver King Consol. Min. Co., 204 F. 166 (C. C. A. 8), Ann. Cas. 1918B, 571; Jennings v. United States, 264 F. 399 (8 C. C. A.); Halpin v. Savannah River Electric Co. (C. C. A.) 41 F.(2d) 329; section 111, title 28 U. S. C. (28 USCA § 111); Equity Rule 39 (28 USCA following section 723).

These cases are all bottomed upon and illustrative of the rule that: "An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or subject-matter which is separable from the interest of the other parties before the court, so that it will

---

[1] Not for publication.  [2] Memorandum and conclusions.

not necessarily be directly or injuriously affected by a decree which does complete justice between them, is a proper party to a suit. But if he is not an indispensable party, and if his presence would oust the jurisdiction of the court, the suit may proceed without him." Silver King Coalition Mines Co. v. Silver King C. M. Co. (C. C. A. 8) 204 F. 166, 169, Ann. Cas. 1918B, 571.

· Adopting this rule in the present controversy, it is apparent that the final decree adjudging questions here referred to could not be entered by this court without directly affecting adversely the interests of the Federal Emergency Administrator of Public Works, and he is therefore, under the rule, an indispensable party to the suit.

■ Third, the claims of the defects in the National Industrial Recovery Act and the rights and powers of the Federal Emergency Administrator of Public Works to act in the entering into of the contract for a loan and grant to the town in this case have been carefully considered in an elaborate opinion by Judge Otis, in the case of Missouri Utilities Company v. City of California (D. C.) 8 F. Supp. 454, and his reasoning and conclusions seem to me to be correct, and attacks of the complainant herein upon the constitutionality of the National Industrial Recovery Act and the power of the Public Works Administrator to act thereunder are without merit.

■ Upon the question of whether or not the town through its officers proposes to enter into an illegal contract that will directly affect complainant's interests or rights, whatever they may be, it seems to me under the authority of Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483; City of Campbell v. Ark.-Mo. Power Co., 55 F.(2d) 560, 562 (C. C. A. 8); Iowa Southern Utilities Co. v. Cassill, 69 F.(2d) 703 (C. C. A. 8), the complainant has the right to challenge illegal acts of the town or its officers that might result in damage to its property rights, and I therefore consider the several charges set up in the complaint of the actions of the officers of the town.

■ Has the town the authority from the state of Iowa to enter into a contract with the United States government to borrow money and accept a grant? .

The authority is granted by the Simmer Act (sections 6134-d1 to 6134-d7, Code of Iowa, 1931), for the town to borrow money and construct a plant to be paid for out of the future earnings thereof, and no limitation on this authority as to where or from whom it should borrow the money is contained in the act. Cases relied upon by complainant where authority was necessary to be given by the Legislature to the towns to accept loans and grants from the government are all for the construction of public improvements, not especially authorized by any general or specific grant of power to the city or town to construct, or borrow money to construct.

■ The objection that the voters did not give this authority to the town is also without merit, as the taxpayers and electors of the town are not affected by the method or manner in which the money is procured. They are only interested in the amount to be expended and the limitation on the expenditure to be payable from the net earnings of the plant itself. The officers of the town do not propose to exceed this authority. I therefore find as a matter of law that the council are not endeavoring to enter into a contract at material variance with the authorization granted by the voters.

■ May the town of Lamoni accept the grant from the government? This is in the nature of a gift. The objections that it entails responsibility and conditions beyond the power of the town to carry out will be later considered. Speaking broadly, the town is authorized by the State Legislature to accept gifts or grants. The town of Lamoni is authorized by section 5738 of the 1931 Code of Iowa to "acquire and hold real and personal property," and there is no limitation on the power of the town to acquire such real or personal property by any usual mode of acquisition, such as by gift, or contract with or without conditions imposed.

The grant is in the nature of a loan, as it entails conditions and responsibilities that, with the loan, make its acceptance a plan of financing rather than a gift. See Mo. Utilities Co. v. City of California, supra (D. C.) 8 F. Supp. 454, page 467.

Does the contract proposed to be entered into between the town and the Federal Emergency Administrator of Public

Works contemplate and require the town of Lamoni to surrender to the Public Works Administration its powers, functions, and discretions vested in said town by the statutes of the state of Iowa? And if such powers are delegated, does it affect the complainant in this suit directly so that it may have the town and its officers enjoined from entering into and carrying out that contract? Is the contract in this regard illegal and void?

Specifically, in its written argument to this court, the complainant points out many items in the contract which it claims render the contract so illegal and void. The town agrees to sell and the government to buy $77,000 worth of bonds secured by the plant and revenue of the plant to be built. The government, from the making by the town of a requisition satisfactory in form and substance to the administrator, agrees to pay a maximum of 30 per cent. of the cost of labor and material in the project by way of a grant.

■ The first objection in the argument is that the contract requires the town to deposit the proceeds from the sale of the bonds in a Federal Reserve System Bank satisfactory to the administrator. It is claimed that this abrogates or contravenes a statute (Code of Iowa 1931, § 7420-d1 et seq.) of the state requiring funds of the city to be deposited in banks first to be approved by the town council. Certainly this is not a variance between the contract that would warrant the charge that to enter into such a contract with the government would be illegal. And the council could delegate a bank designated by the administrator.

■ Arguments are also made as to the granting of authority to the Public Works Administrator to have supervision of the purposes for which the money should be expended, that the work should be satisfactory to the administrator, that all work shall be done subject to the rules and regulations adopted by the administrator as to bids, contractor's bonds, contracts, wages, and labor, etc. The town having been authorized by the state and by its voters to construct the plant in the town, the method and manner of procuring the money for such construction is left to the executive officers of the town to carry out, and if it can agree with a contractor as to how the work is to be done and to rules and regulations with reference to the contract, wages and labor, bids, the contractor's bonds, etc., I can see no reason why it could not do so with the loaner of the money, or why there is any delegation of the power of the town to the government in these particulars. The fact that the government has put around its loaning of money certain provisions for the protection of the use of that money for the purposes for which it is to be advanced is generally recognized in the business world as a proper protection by any loaner of money to see that that money goes for the purposes for which it was advanced, and while the contract may contain some provisions that other business men would view with suspicion as being too harsh, that is a question entirely within the power and authority of the administrative officers of the town to decide. The courts cannot interfere with the exercise of this power if it is properly delegated to the town, which it is in this case.

■ Perhaps a more serious charge is that section 6143 of the Code of Iowa of 1931 places in the city council the power and duty to fix reasonable rates for utility service. That this power cannot be delegated is without question. The agreement provides that the government shall be under no obligation to pay for any of the bonds or to make any part of the grant (section 27-h), "if the resolution authorizing the issuance of the bonds and the ordinance fixing the rates to be charged for the facilities and service afforded by the electric system shall not be satisfactory as to form and substance to the Administrator."

■ These provisions have to do with the conditions required by the government before it will make the loan or grant and do not in any way attempt to deprive the city council of its rate-making power or directly or indirectly require the town council to delegate its rate-making power to the Public Works Administrator.

Perhaps the court has not touched upon all of the matters raised by the complaint, but has done so as to the more material claims, and finds them without merit. Having carefully considered the entire complaint and the arguments of counsel, I do not find that there are sufficient charges as against the illegality of the contract or against the powers and authorities of the town to warrant this court in continuing to restrain the town from completing its contract with the

government. The clerk will therefore enter the following order:

The above-entitled cause having come on for hearing in open court at Des Moines, Iowa, on the 19th day of July, 1935, upon an application for a temporary injunction, same is argued and submitted, and being advised, the court finds that the request for a temporary injunction should be and the same is hereby denied, and the present temporary restraining order vacated and annulled. To all of which the complainant excepts.