Leonard MORRIS, Plaintiff,

v.

Donald P. STEELE, as Regional Director,
Post Office Department, Boston,
Defendant.

Civ. A. No. 64–619.

United States District Court
D. Massachusetts.

April 26, 1966.

Edward F. Myers, Holtz, Sullivan & Zonderman, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for defendant.

JULIAN, District Judge.

This case is before the Court on defendant's motion to dismiss the amended complaint, and on defendant's motion for summary judgment.

The motion to dismiss raises the issue of failure to join indispensable parties.

The amended complaint [1] alleges that following negotiations between the Post-

---

1. In his memorandum in opposition to defendant's motion to dismiss, plaintiff makes the following statement: "But this is a separate suit based upon rights which the plaintiffs claim flow out of an executive order, not the Civil Service rules and regulations. The fact that some plaintiffs have also pursued remedies before the Commission is irrelevant. The rights urged by the Plaintiff on behalf of all employees in the Class are above and beyond the scope of the Civil Service rules and regulations."

master General and six national employee organizations, namely, the National Association of Letter Carriers AFL–CIO, the National Association of Post Office and General Services Maintenance Employees, the National Association of Special Delivery Messengers AFL–CIO, the National Federation of Post Office Motor Vehicle Employees AFL–CIO, the National Rural Letter Carriers Association, and the United Federation of Postal Clerks AFL–CIO, a written agreement was entered into between these employee organizations and the United States Post Office Department on July 1, 1964. Pursuant to this agreement, the defendant, the Regional Director of the Boston Regional Office, Post Office Department, has taken action which resulted in loss of compensation, seniority and status to the plaintiff employees.

It is alleged that the plaintiff employees were not represented at the negotiations which resulted in the agreement and that they were not parties to the agreement. It is alleged that the agreement with respect to the reassignments of plaintiff employees is illegal in that it violates Executive Order 10988 and policies stated by the Postmaster General before a Subcommittee of the Committee on Appropriations of the House of Representatives. It is apparent from the complaint that this action involves "the meaning, purpose, intent and scope" of the July 1, 1964, agreement (see Amended Complaint, Par. 2). In fact, the relief sought is a "declaratory judgment construing * * * the legality of those provisions of the above-described agreements which have been entered into between the Postmaster General and the various employee organizations insofar as they affect the rights of the plaintiffs." (Amended Complaint, prayer 1.)

█ The United States Supreme Court expressed a definition of an indispensable party in the case of Shields v. Barrow, 1854, 17 How. [130] 137, 147, 58 U.S. [130] 137, 147, 15 L.Ed. 158, which has been consistently applied since 1854. Indispensable parties are "[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." That definition was quoted and applied in the case of Niles-Bement-Pond Co. v. Iron Moulders Union, 1920, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145. In that case the Niles-Bement Company brought a petition for an injunction in the District Court for the Southern District of Ohio to restrain former employees of the Niles Tool Works Company (a corporation of which Niles-Bement owned a controlling interest) from molesting workmen who were employed by the Tool Company to take the places of these former employees. "Petitioner's claim of right * * * is rested wholly upon the contract of the Tool Company with its employees, and the character and construction of that contract of employment must inevitably be passed upon in any decision of the case." 254 U.S. at 80–81, 41 S.Ct. at 41. The Court applied the *Shields* definition quoted above and determined that on this state of the case the Tool Company was an indispensable party.

█ As stated above, the present case depends upon a determination of the meaning, purpose, intent, scope and legality of an agreement between the Postmaster General and six employee organizations, none of which has been made a party to this action. While a judgment of this Court would not be binding on nonparties to the action, the practical interest of both the Postmaster General and the employee organizations is clear. The plaintiff is attempting by this action to rearrange the compensation, seniority and status of employees "so numerous as to make it impracticable to bring them all before the Court." (Amended Complaint, Par. 3.) This would have an inevitable effect upon employees who are members of the employee organizations that negotiated with the Postmaster General to establish the present state of compensation, seniority and status. The

resultant disruption in management-employee relations is a very serious interest of the negotiators of the agreement sought to be declared illegal—it is, in fact, "an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, supra; see also Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95.

■ Therefore, since indispensable parties have not been brought before the Court, the defendant's motion to dismiss the complaint is hereby granted to the extent that the plaintiff's claim involves the meaning, scope and legality of the provisions of the agreement.

■ Plaintiff also seeks "a declaratory judgment finding the action of the Defendant in reducing * * * Plaintiffs to substitute status in the postal service to be unlawful and contrary to Executive Order 10988" (Amended Complaint, prayer 2).

Plaintiff's reliance on Executive Order 10988 is not well founded. What was stated by the Court in Manhattan-Bronx Postal Union v. Gronouski, 1965, D.C. Cir., 350 F.2d 451, 456, applies to the instant case with equal force:

> "Executive Order 10988 represents in essence a formulation of broad policy by the President for the guidance of federal employing agencies. It had no specific foundation in Congressional action, nor was it required to effectuate any statute. It could have been withdrawn at any time for any or no reason. * * * [H]e left large areas for the exercise of discretion at levels below the summit. * * * The President did not undertake to create any role for the judiciary in the implementation of this policy. * * *"

■ Plaintiff's contention that the statements made by the Postmaster General before a Subcommittee of the House Committee on Appropriations have the force of a regulation that was binding on the defendant Regional Director, is without merit.

The amended complaint fails to state a claim upon which relief can be granted.

Defendant's motion for summary judgment is also granted.

The amended complaint is dismissed.