**John KRESS, Plaintiff,**

**v.**

**LOCAL NO. 776, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Defendant.**

**Civ. A. No. 8886.**

United States District Court
M. D. Pennsylvania.
May 15, 1967.

**644**

G. Thomas Miller, Joseph A. Klein, Harrisburg, Pa., for plaintiff.

Handler & Gerber, Harrisburg, Pa., for defendant.

## MEMORANDUM

FOLLMER, District Judge.

On March 4, 1965, this action was commenced in the Court of Common Pleas of Dauphin County, Pennsylvania. On March 23, 1965, the defendant filed a petition for removal to this court under 28 U.S.C. § 1441, alleging that this Court has original jurisdiction under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. The gist of the complaint, which consists of thirty-nine paragraphs, is as follows: Plaintiff, while employed by Standard Motor Freight, Inc. (hereafter referred to as employer), was a member, and still is, in good standing of Local No. 776, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereafter referred to as union) which union was the bargaining agent for plaintiff and its other members with his employer. In February, 1961, plaintiff began noticing pay shortages and submitted written grievances to his steward, within forty-eight hours, as provided in Article 7, Section 1, of the contract between the union and the employer. Since no action was taken, he subsequently filed grievances at the union hall and demanded action from certain officers of the union, who allegedly told him that although they had merit, the union would not process them. In September, 1962, approximately one and one-half years after the first pay shortage, plaintiff ceased submitting grievances "suspecting the futility of the gesture." (Complaint, ¶ 17.) On September 27, 1963, plaintiff obtained a substitute to make a trip for him because of illness, and two days later was orally notified by the shop steward that his employment would be terminated. He did not receive a letter of discharge and on October 8, 1963, he filed a grievance for unlawful discharge under Article 10 of the Collective Bargaining Agreement. Subsequently he discovered that many of his written grievances were in the steward's car trunk and had received no further processing. This was reported to officers of the union who again told plaintiff they would not receive further consideration. On January 22, 1964, the Pennsylvania Unemployment Compensation Board ruled that plaintiff was discharged without cause and was entitled to unemployment compensation benefits. (Complaint, Exhibit 3.) There then follows certain allegations concerning discussions between plaintiff's counsel and the union's counsel, the outcome of which, it is alleged, was an agreement to present plaintiff's grievances to the Joint Grievance Committee, as provided in Article 7, Section 3 of the Collective Bargaining Agreement. On October 2, 1964, the said Committee filed a report that stated it was decided by majority

vote that the claim for reinstatement to employment with back pay was untimely filed and improperly before the committee. It is then averred that the union "failed to act in good faith and in a reasonable manner in processing and presenting plaintiff's grievances." (Complaint, ¶ 35.) For relief, plaintiff requests this court to "enjoin defendant from breaching their fiduciary duty to process any of plaintiff's future grievances and that judgment in favor of the plaintiff and against the defendant be entered for $6,300.00 in loss of reinstatement pay, $3,877.16 in back wages, $25,000.00 as punitive damages and the costs and legal fees incurred by plaintiff in bringing this complaint in equity." (Complaint, p. 10.)

On March 23, 1965, the defendant filed motions to strike matters from plaintiff's complaint, for more definite statement and to dismiss. Briefs and affidavits were filed by both parties relative to said motions. By Order dated August 27, 1965, all proceedings in this case were stayed pending the determination of an action instituted by the union against the employer, instituted on September 30, 1964, and docketed to Civil Action No. 8670, International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 776 v. Standard Motor Freight, Inc., D.C., 260 F.Supp. 269, because a determination in that case "may be dispositive of the issues here raised." On November 3, 1966, this court filed Memorandum and Order in Civil Action No. 8670, in which it was ordered, inter alia, that certain claims of Kress for pay shortages be arbitrated and that the arbitration award denying Kress' grievance concerning his discharge not be remanded for reconsideration and clarification. By Order dated November 10, 1966, the Order dated August 27, 1965, staying these proceedings was vacated. The motions to strike, for more definite statement and to dismiss are currently before this court for determination.

The motions to dismiss will be considered first. The union filed motions to dismiss on the following grounds: (1) Failure to join an indispensable party— the employer; (2) Pendency of a prior action by the union against the employer—Civil Action No. 8670; (3) Order of the National Labor Relations Board refusing to issue a complaint in effect dismissed charges made here; (4) Lack of jurisdiction over the subject matter because: (a) pre-emption by the National Labor Relations Board, (b) failure to exhaust contractual remedies, and (c) failure to exhaust internal union remedies; and (5) Failure to state a claim upon which relief can be granted.

The first motion to dismiss alleges that the employer, Standard Motor Freight, Inc., is an indispensable party. A recent case in the Third Circuit deals with the indispensable party doctrine and Rule 19 of the Federal Rules of Civil Procedure. In Provident Tradesmens Bank and Trust Company v. Lumbermens Mutual Casualty Company, 365 F.2d 802 (3d Cir. 1966), it is stated:

"It has been settled for more than a century and a half that a party is indispensable when his rights may be affected and that a court 'cannot proceed to a final decision of the cause' until he is made a party. Russell v. Clark's Executors, 7 Cranch 69, 98, 3 L.Ed. 271 (1812).

"The indispensable party doctrine is not procedural. It declares *substantive* law and accords a *substantive right* to a person to be joined as a party to an action when his interests or rights may be affected by its outcome. The indispensable party doctrine is beyond the reach of, and not affected by, Rule 19 of the Federal Rules of Civil Procedure, since the Rules, as later developed, cannot 'abridge, enlarge or modify any *substantive right*.' 28 U.S.C.A. § 2072 (emphasis supplied)." 365 F.2d at 805.

"Rule 19 does not, and cannot, effect any alteration, either by way of modification or extension, in the standards by which the existence of an indispensable party may be determined." 365 F.2d at 812.

In Provident Tradesmen, supra, the court also stated in relation to the determination of what constitutes an indispensable party, as follows:

"In the oft-quoted State of Washington v. United States, 87 F.2d 421 (9 Cir. 1936), there was enunciated what has now become landmark criteria in testing whether a party is indispensable, after it has been determined that he is interested.

"The four-fold criteria there stated, at pages 427, 428, follows:

'(1) Is the interest of the absent party distinct and severable?

'(2) In the absence of such party, can the court render justice between the parties before it?

'(3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party?

'(4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

'If, after the court determines that an absent party is interested in the controversy, it finds that *all* of the four questions outlined above are answered in the *affirmative* with respect to the absent party's interest, then such absent party is a *necessary party*. However, if *any* one of the four questions is answered in the *negative*, then *the absent party is* indispensable.' (Emphasis supplied.)

"It is important to note, that in its discussion of the indispensable party question, the Court said, at pages 427, 428:

'In cases where there is error in nonjoinder of parties, either necessary or indispensable, the courts have fallen into common error by designating the error as "jurisdictional". The defect is not, properly speaking, a jurisdictional one * * *.

'[T]he nonjoinder of an indispensable party is *fatal error,* and the court *cannot* proceed to a decree in the absence of such indispensable party, notwithstanding the fact that the joinder *would oust the court of jurisdiction.* Neither the statute [Act of March 3, 1911, ch. 231 § 50, 36 Stat. 1101] nor the equity rule [Rule 39 of the Equity Rules of 1912, 28 U.S.C.A. following section 723], * * * permit the court to proceed in the absence of an indispensable party.' (Emphasis supplied.)

"The indispensable party doctrine as declared in Shields [Shields v. Barrow, 17 How. 130, 15 L.Ed. 158] and State of Washington was applied in Commonwealth Trust Company of Pittsburg v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219 (1924) and Niles-Bement-Pond Company v. Iron Moulders' Union Local No. 68, 254 U. S. 77, 41 S.Ct. 39, 65 L.Ed. 145 (1920).

"This court has time and again likewise done so." 365 F.2d at 807.

In the instant case, plaintiff has not joined the employer as a defendant. In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), it was stated, by the Supreme Court, that if it is an employer's breach that triggered the controversy, these damages may not be recovered from the union. The union would only be liable for damages caused by its failure to press the grievance. Thus, it was stated: "[I]n fact, the employer may be (and probably should be) joined as a defendant in the fair representation suit, as in Humphrey v. Moore, supra [375 U.S. 335, 84 S.Ct. 363, 11 L.

Ed.2d 370]." Vaca v. Sipes, supra, 87 S. Ct. at 920. Under this language, the union claims that the employer is an indispensable party.

Under the criteria stated in Provident Tradesmen Bank and Trust Company v. Lumbermens Mutual Casualty Company, supra, 365 F.2d at 807, it appears that the employer is an indispensable party. The basic complaint here concerns the pay shortages and his discharge, both allegedly caused by the employer, and the union's alleged failure to press his grievances relating thereto.

In the first place, it cannot be said that in the absence of the employer, a judgment would have no injurious effect on its interests. Clearly, the employer's actions started this whole controversy. The absence of the employer would make the fashioning of relief almost impossible, since the possible relief may be arbitration, damages or other equitable relief. The interests of the employer are inextricably tied in to this action and thus the employer is an indispensable party. Neither party has briefed the question of whether the employer can be joined. Accordingly, the plaintiff will be allowed twenty (20) days from the date of this Memorandum and the Order, to join the employer, Standard Motor Freight, Inc., or the action will be dismissed. See 3 Moore, Federal Practice ¶ 19.05, p. 2147 (2d ed. 1966).

The second motion to dismiss is based on the pendency of a prior action by the union against the employer, Civil Action No. 8670. In that case, as indicated above, it was ordered, inter alia, that Kress' wage shortages be arbitrated. It appearing that the said arbitration has not yet occurred and that the results thereof are essential to a fair adjudication of the remaining motions, determination of the remaining motions filed by defendant will be stayed pending the outcome of the said arbitration.