In the Matter of Arthur L. LIMAN, as Trustee in Bankruptcy of Seatrade Corporation, Kulukundis Maritime Industries, Inc., Tramp Shipping & Oil Transportation Co., A. H. Bull Steamship Co., A. H. Bull & Co. (Inc.), American Tramp Shipping Development Corporation, Messenian Shipping Corporation, and Star Line Agency, Inc., Plaintiff,

v.

MIDLAND BANK LTD. and Fairplay Tanker Corp., Defendants.

No. 69 Civ. 4371.

United States District Court,
S. D. New York.

Feb. 4, 1970.

**164**

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for plaintiff; Stuart Robinowitz, Steven B. Rosenfeld, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Midland Bank Ltd.; Henry Harfield, Herbert J. Tamres, New York City, of counsel.

## OPINION

THOMAS F. MURPHY, District Judge.

The defendant bank moves to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted or on the ground of *forum non conveniens* and for such other relief as the court may deem proper. Plaintiff cross-moves for discovery of documents. In the exercise of discretion under Rule 12(b) F.R.Civ.P., we exclude all matter outside the complaint in relation to the motion addressed to its sufficiency and consider the affidavits only in connection with the question concerning the *forum*.

The complaint contains two claims. The first is asserted in the direct and primary right of the plaintiff as the trustee in bankruptcy of the eight corporations named in the caption of this action. The second is derivative.

The allegations of the complaint will be stated with some detail.[1] For the purpose of the motion directed to the sufficiency of the claims, all the well pleaded facts are of course deemed admitted. Not deemed admitted, however, are conclusions of law cast in the form of factual allegations or unwarranted inferences of fact.

## I

## THE COMPLAINT

It is alleged that this case arises under the Bankruptcy Act and that it is brought under § 70 of the Act on account of transfers of property of the bankrupt estate after bankruptcy. Jurisdiction is based on § 2a(7) and § 70e (3) of the Act (11 U.S.C. § 11a(7) and § 110e(3)) and on 28 U.S.C. § 1332.

Plaintiff is a citizen of the State of New York. Defendant Midland Bank Ltd. is a corporation organized under the laws of the United Kingdom. Its principal place of business is in London. Defendant Fairplay Tanker Corporation is a Panamanian corporation. Its location or place of business is not stated in the claims. It has not been served with a summons and complaint, nor has the marshal been asked to do so, according to the docket.

The eight bankrupts were in the shipping business. Between March 11 and April 19, 1963, they filed petitions for arrangements under Chapter XI of the Bankruptcy Act. On May 21, 1963, their Chapter XI proceedings were superseded by proceedings for reorganization under Chapter X of the Act. On May 20, 1966, the court made an order which consolidated these bankrupts, then debtors, and "ordered that for the purposes of the Chapter X proceedings and any ensuing proceedings under the bankruptcy laws 'their separate corporate entities shall be

---

1. The complaint is complex and skillfully drawn. Its form and content bear

upon the larger question concerning the *forum*.

* * * disregarded and the assets and liabilities of said companies * * * shall be merged.' " [2]

In or about January 1968 the Chapter X trustees liquidated and dissolved Red Canyon Corporation and merged all of its assets into the consolidated estate. On March 22, 1968, the court terminated the Chapter X proceedings and adjudicated the debtors therein bankrupts. On May 6, 1968, plaintiff qualified as the trustee in bankruptcy and succeeded to the assets of the bankrupts formerly held by their Chapter X trustees.

The bankrupts and various subsidiary and related companies were owned and controlled, directly or indirectly, by Manuel E. Kulukundis and members of his family. He personally dominated all of them and conducted their operations as a single business enterprise. One of the eight bankrupts is Kulukundis Maritime Industries, Inc. ("KMI"). Its assets had been included in the consolidation. It owned all of the stock of the Red Canyon Corporation ("Red Canyon") mentioned above.

When the Chapter XI and Chapter X petitions were filed, and at all times relevant to the complaint, "the bankrupt KMI or Red Canyon owned 90 percent of the stock of Fairplay Tanker Corporation ('Fairplay'), a Panamanian corporation." At all such times Red Canyon was also the largest creditor of Fairplay. The latter owed Red Canyon more than $1,000,000, no part of which has since been paid.

At all such times, Fairplay owned a vessel called the Arcturus. Both Red Canyon and Fairplay were dominated and controlled by Kulukundis. Their assets were commingled with, and treated as a part of, those of the single business enterprise in which the bankrupts were engaged in disregard of their separate corporate entities. Midland Bank knew or had reasonable cause to believe that Fairplay was owned, directly or indirectly, by one of the bankrupts and that its assets were commingled with and treated as part of the single business enterprise in which they were engaged.

Going back in the chronology, on October 11, 1963, at a closing alleged to have been held concurrently in New York and at the offices of the Midland Bank in London, Kulukundis caused Fairplay to transfer the vessel Arcturus, without the knowledge or consent of the Chapter X trustees or the court, to Bootes, S. A., a Panamanian corporation, for the sum of $1,400,000. After deductions, there was due and owing to Fairplay the sum of $651,302, the balance of the purchase price. At such closing this sum was paid by two checks payable to the order of Fairplay. The checks were delivered to Kulukundis at the offices of the Midland Bank which opened an account in the name of Fairplay at its London office. The bank permited Kulukundis to deposit one of the checks for $500,000 in that account or in an account in the name of Bruce Rappaport and exercised dominion and control over such funds of Fairplay.

Thereafter the bank paid the $500,000 to Rappaport for his personal use without any consideration to Fairplay. The bank knew or had reasonable cause to believe that the transfer to Rappaport of funds belonging to Fairplay was not authorized by the Chapter X trustees or the court or by any other persons empowered to act in behalf of Fairplay. On October 11, 1963, Kulukundis endorsed the other check of $151,302 to the order of Rappaport. The Midland Bank negotiated it and credited the proceeds to the personal account of Rappaport. The rest of the allegations just

2. The names of the eight corporate debtors which became the bankrupts do not appear in the opinion rendered on the consolidation by Judge Croake, In re Seatrade Corp., 255 F.Supp. 696 (S.D. N.Y.1966). His decision was affirmed sub nom. Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845 (2d Cir. 1966). In the opinion on affirmance the names of the eight corporate debtors that became the bankrupts are stated in the caption. They are the same as those stated in the caption of this action.

summarized in connection with the first check are repeated in respect of the second check.

The defendant bank expected or should reasonably have expected its acts to have consequences in the State of New York. It derives substantial revenue from international commerce.

The relief requested is a money judgment in favor of the plaintiff against the defendant Midland Bank for $651,302 plus interest from October 11, 1963, and such other relief as the court may deem just.

## II

It cannot be gainsaid that the successive Chapter X and bankruptcy trustees took title to all of the assets, wherever located, of the eight corporate debtors which became bankrupts. But did they, in their own direct and primary right, take title to Fairplay which was never before the court in any proceeding under the Bankruptcy Act, or to its assets, or to any causes of action which Fairplay might have had against the Midland Bank?

This part of the case depends upon the allegation in the first sentence of the eleventh paragraph of the complaint. It says that at all relevant times "Fairplay owned the vessel called the S/T/T Arcturus," and that "the bankrupt KMI or Red Canyon owned 90 percent of the stock of Fairplay." That is not enough. Fairplay's assets and its own direct and primary causes of action are not thereby or by any fair inference therefrom brought into the title of KMI or Red Canyon or the successive Chapter X and bankruptcy trustees.

Section 70 is entitled "Title to Property." So far as here material it provides that "[t]he trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt * * * to all of the following kinds of property wherever located * * * (4) property transferred by him [the bankrupt] in fraud of his creditors; (5) property, including rights of action, which * * * he [the bankrupt] could by any means have transferred * * *." Fairplay was not one of the eight bankrupts. The meaning of the word "bankrupt" is stated in § 1(4) of the Bankruptcy Act (11 U.S.C. § 1(4)) as follows: "'Bankrupt' shall include a person[3] against whom an involuntary petition or an application to revoke a discharge has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt." Fairplay was none such.

The allegations concerning the consolidation order in the Chapter X proceedings do not better that aspect of the first claim. They do not put Fairplay or its vessel Arcturus or the avails of its sale or Fairplay's own cause of action concerning them within the pleaded provisions of the order of consolidation. Nor is the first claim saved into sufficiency by the allegation that Red Canyon and Fairplay were dominated by Kulukundis and that their assets were commingled with, and treated as a part of, the single business in which the bankrupts were engaged in disregard of their corporate entities. Assuming for pleading purposes that that is true, the Chapter X trustees might have presented it as inducement to the court having jurisdiction of the Chapter X proceedings to include Fairplay and its assets in the court's order of consolidation made on May 20, 1966. But such inducement would have been to no avail unless Fairplay were within the jurisdiction of that court and unless its order of consolidation included Fairplay or its assets. There is nothing in the first claim to show either.

In fact, there is much in the first claim showing neither. The identity of the eight corporate debtors which became the bankrupts is revealed in the caption of this case. The order of con-

---

3. A "person" includes a corporation. Bankruptcy Act § 1(23). (11 U.S.C. § 1(23)).

solidation as pleaded confirms the identification in terms of "the bankrupts (then debtors)," that is to say, the eight corporations named in the caption of this case. It is also admitted that the plaintiff as trustee in bankruptcy "succeeded to the assets of the bankrupts which had been held by the trustees previously appointed under Chapter X"—again the same eight and not including Fairplay or its assets.

■ Title to corporate assets or claims is not vested in the shareholders. In re Adolf Gobel, Inc., 80 F.2d 849 (2d Cir. 1936); In re Panitz & Co., 270 F.Supp. 448 (D.Md.1967) and the cases cited therein, affirmed, "for the reasons stated in the opinion of the District Court," sub nom., Hammerman v. Arlington Federal Savings & Loan Ass'n, 385 F.2d 835 (4th Cir. 1967); Marr v. Tumulty, 256 N.Y. 15, 24, 175 N.E. 356 (1931); Brock v. Poor, 216 N.Y. 387, 401–408, 111 N.E. 229 (1915). Plaintiff has no claim under § 70 of the Bankruptcy Act in the right of a shareholder of Fairplay regardless of whether the shares were owned by KMI or Red Canyon.

If that were all there were to the first claim, it would be dismissed as one upon which no relief can be granted. But there is more. It is a molecule that completely transforms the nature of the first claim and moves its mass from one in the alleged right of KMI or Red Canyon as the 90 percent shareholder of Fairplay into one in the alleged right of Red Canyon alone as a creditor of Fairplay. The second sentence of the eleventh paragraph of the complaint reads: "At all such times, Red Canyon was also the largest creditor of Fairplay, being owed an amount in excess of $1,000,000 in March 1963, no part of which has since been repaid."

■ That sentence must be read in connection with the allegation that in or about January 1968 the Chapter X trustees duly liquidated and dissolved Red Canyon and merged all of its assets into the bankrupt estate. Both, then, must be connected with the allegation that KMI, one of the bankrupts, owned all of the stock of Red Canyon. It seems to be the intendment of it all that somewhere in the congeries of assets of the consolidated estate of the eight bankrupts, including the assets received on the dissolution of Red Canyon, lies a creditor's claim against Fairplay for more than $1,000,000; that it is the property of a bankrupt; that plaintiff is the trustee in bankruptcy of such bankrupt; and that, in terms of all the other allegations, including those bearing on the disregard of corporate entities, a claim is asserted either under the Bankruptcy Act or the law of the State of New York to recover for a transfer made in fraud of creditors. On that aspect of it, the first claim is held not to be such that no relief can be granted upon it, however contradictory it may be in the concepts of law and theories out of which it is spun.[4]

We have made no reference to defendant Midland Bank's argument that the Bankruptcy Act has no extra territorial jurisdiction because we are satisfied that it has no present relevancy. Plaintiff concedes that the law of England will be the controlling law on the issue whether a tort was committed by the bank.

### III

Subject matter jurisdiction of the second claim is based upon diverse citizenship and the requisite jurisdictional amount.

---

4. Thus, as a stockholder of Fairplay, plaintiff clings to Red Canyon's separate corporate entity: so, too, as its creditor for more than $1,000,000. At the same time he disregards its corporate entity and puts it, through Red Canyon, into the hotchpot of the consolidated eight bankrupts, "their separate entities * * disregarded and the assets and liabilities of said companies * * * merged."

The second claim is against the defendant Midland Bank on behalf of the defendant Fairplay. It repeats all of the allegations of the first claim. It alleges that plaintiff, as the trustee in bankruptcy of KMI, "owns" 90 percent of the stock of Fairplay and is its largest creditor. It adds that demand has been made upon the officers and directors of Fairplay to convene a special meeting of its stockholders, but such demand has been refused; that no demand to begin this action was made upon the present officers and directors of Fairplay because plaintiff has asserted claims against them in another pending action which are related to the claims asserted in this action, and that therefore such demand would be futile.

■■ Despite its avowed derivative or secondary character, it ends with the same prayer for relief as that stated above in relation to the first claim, that is to say, a judgment to plaintiff for $651,302 with interest. No court would grant such relief. Under plaintiff's general prayer for relief any favorable judgment that could conceivably be granted would be granted only to and in the name of Fairplay. A derivative suit is an equitable action and the relief granted in it must be in favor of the corporation whose primary right is enforced derivatively. This is so notwithstanding that the corporation is named as a defendant. Price v. Gurney, 324 U.S. 100, 105, 65 S.Ct. 513, 89 L.Ed. 776 (1945); Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

The complaint is not verified. It is, however, certified by the signature of plaintiff's attorney. The latter's affidavits on the question of the *forum* contain under his oath the same matter as is alleged in the complaint, sometimes literally repeated. An attorney may make the verification required by Rule 23.1 F.R.C.P. We therefore deem the complaint verified within the principles applied in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), including the concurring opinion of Mr. Justice Harlan.

The second claim does not allege that the plaintiff was a shareholder of Fairplay at the time of the transaction of which he complains, i. e., October 11, 1963, or that his shares thereafter devolved on him by operation of law. Rule 23.1 F.R.C.P. requires such an allegation in a derivative action. We are compelled to determine by analysis whether that which could easily have been explicitly alleged in a single short sentence appears by implication anywhere in the complaint.

■ It is alleged that on May 21, 1963, the Chapter XI proceedings were superseded by the filing of petitions for reorganization under Chapter X of the Bankruptcy Act. The date when the Chapter X trustees were appointed is not alleged. That simple fact must be within plaintiff's knowledge. If the Chapter X trustees were appointed after October 11, 1963, the requirement of Rule 23.1, that the plaintiff in a shareholder's derivative action must allege that he was a shareholder at the time of the transaction of which he complains, could not be fulfilled. The omission to allege such a simple but crucial fact is remarkable. It is alleged, however, that when the Chapter X petitions were filed and "at all times relevant hereto, the bankrupt KMI *or* Red Canyon owned 90 percent of the stock of defendant Fairplay * * *." It may perhaps be a warranted inference that the Chapter X trustees of KMI were appointed on a date between May 21, 1963 and October 11, 1963.

With the benefit of such inference, the Chapter X trustees of KMI and plaintiff as their successor in the bankruptcy of KMI, and each as the alleged owner of 90 percent of the shares of Fairplay by operation of law, could under New York law bring a derivative or secondary action against Fairplay and the Midland Bank after October 11, 1963, when the transaction of which the plaintiff now complains occurred. Accordingly in re-

spect of the bankrupt KMI, it cannot be said that no relief could be granted upon the second claim under New York law, relating to derivative actions affecting corporations.

But not so, on the other aspect of the dubitative disjunctive emphasized above, if it was Red Canyon that owned the 90 percent of the shares of Fairplay on October 11, 1963.[5] Red Canyon could not have been brought onto the scene until the order of consolidation was made by the court on May 20, 1966, in the Chapter X proceedings. Indeed, it is alleged that it was not until "about January 1968" that the Chapter X trustees liquidated and dissolved Red Canyon and merged all of its assets into the bankrupt estate. On the aspect of the disjunctive allegation that ownership of the 90 percent of the Fairplay stock was in Red Canyon, no relief could be granted to plaintiff on the second claim under the law of New York[6] relating to a derivative shareholder's action in behalf of his corporation.

It is not necessary to discuss construing the "or" as "and." Cf. DeSylva v. Ballentine Guardian, 351 U.S. 570, 573–574, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). It would make no difference in the result even if so construed. The second claim is sufficient on one aspect of its disjunctive allegation of ownership of the Fairplay shares, and insufficient on the other. Therefore it should not be dismissed on a motion addressed to the pleading. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876, 877 (2d Cir. 1952); Rules 8(e) (2) and 8(f) FRCP.

## IV

The case expands on the bank's motion to dismiss on the ground of *forum non conveniens* and for such other relief as the court may deem just. Many are the permutations and combinations of the practical factors to be considered in applying the doctrine of *forum non conveniens*. Nevertheless, the basic rights in conflict in application of the doctrine are clear. They are the right of a plaintiff as an American citizen to sue in an American *forum* of his choice, conflicting with the right of a foreign defendant to obviate such choice by application of the doctrine of *forum non conveniens* on the ground that the court selected by the plaintiff should not in equity and good conscience further proceed to adjudication. See Koster v. Lumbermens Mutual Casualty Co., *supra*; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); Rogers v. Guaranty Trust Co. of N. Y., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir. 1956), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1957); Walton v. Arabian American Oil Co., 233 F.2d 541 (2d Cir. 1956); Siegelman v. Cunard White Star Ltd., 221 F.2d 189 (2d Cir. 1955); Saltzman v. Birrell, 78 F.Supp. 778 (S.D.N.Y. 1948); Hall v. American Cone & Pretzel Co., 71 F.Supp. 266 (E.D.Pa.1947).

The affidavits take us beyond the limited bounds of the complaint and illuminate its allegations. On or about October 11, 1963, the given date of the trans-

---

5. The Fairplay shares may be "bearer" shares permitted by the laws of Panama. Plaintiff may not know who owned them on October 11, 1963. Apparently he does not really know who owns them even now, for the allegation of ownership in the present tense that appears in the second claim is made disjunctively and on information and belief, as is the allegation of ownership in the past tense which appears in the first claim.

6. The stockholder's derivative action is an "invention of our equity jurisprudence." Koster v. Lumbermens Mutual Casualty Co., *supra*, 330 U.S. at 522, 67 S.Ct. 828. Does a shareholder of a corporation such as Fairplay, organized under the laws of Panama, have a derivative right of action on behalf of a corporation? If he has, under what conditions? Are they analogous to or different from those prescribed by Rule 23.1 FRCP or the corporation law of New York?

actions attacked, the Midland Bank did not maintain any branch, agency, or other office for the transaction of business in the United States. It was not until April 6, 1965, long after the transactions complained of, that the Midland Bank opened a limited agency in New York pursuant to a license granted by the Superintendent of Banks of the State of New York. Not until March 1967 was such agency converted, pursuant to the Banking Law of New York, into the present branch which conducts a general banking business in New York. Plaintiff's allegation that the Midland Bank "maintains an office and does business in this district" can be true only in the sense of these facts. None of the transactions complained of were carried out at, by or through the Midland Bank's agency or branch or otherwise, anywhere in the United States. These facts are not denied in the supplemental affidavit submitted on behalf of plaintiff in reply to the original affidavit submitted on behalf of the defendant bank. It also is not denied that no part of the assets or moneys referred to in the complaint were received by or paid to the Midland Bank for its own account.

The complaint was filed on October 6, 1969. The summons and complaint were served on the defendant bank on October 7, 1969. When the transactions attacked were discovered in the summer of 1969, plaintiff's attorney consulted English counsel. He was advised to obtain the issuance of a writ in England prior to October 11, 1969, in order to preclude the expiration of the six-year statute of limitations which might be applicable in England. On October 10, 1969, he, obtained the issuance of such a writ through English counsel on plaintiff's behalf. He says he obtained it merely as a protective measure in the event this action should, for any reason, be dismissed. He is informed by his English counsel that he has one year within which to file a complaint in England. He says he has not yet done so. He admits, however, that the proceeding in England has been commenced and exists.

In the leading case concerning the doctrine of inappropriate forum the Supreme Court gave weight to the fact that another action had been brought in the forum of another state where the transactions had occurred and whose law would be controlling. See *Koster, supra,* 330 U.S. at 524, n. 3, 67 S.Ct. 828. In *Vanity Fair Mills, Inc. v. T. Eaton Co., supra,* 234 F.2d at 646, n. 18, the Court of Appeals of our circuit gave weight to the fact that the plaintiff could, if dismissed, nevertheless thereafter bring another action in Canada, and that a stipulation of waiver of the other forum's statute of limitations *pro tanto* could be imposed by this court as a condition of the dismissal. The plaintiff herein has already commenced the other action and has already stopped the operation of the other forum's statute of limitations.

In *Koster, supra,* 330 U.S. at 524, 67 S.Ct. at 831, it is stated: "Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice." Here there are at least three parties to the dispute—the third being the Panamanian corporation, Fairplay. The court file and court docket do not contain any evidence of service of the summons and complaint upon the defendant Fairplay. Fairplay has not voluntarily appeared in this action to give the court jurisdiction over it personally. In the affidavits submitted in behalf of plaintiff, it is claimed that the directors and officers of Fairplay participated in the sale of the Arcturus and the disposition of its avails. They are named as defendants with Fairplay in a companion case upon the same transaction, but the Midland Bank is not named as a defendant therein. In this action the facts are reversed, Midland Bank and Fairplay being named as defendants with no such directors or officers of Fairplay.

The first claim is an action to set aside an allegedly fraudulent conveyance. The second claim, on the identical allegations slightly supplemented to bring

it into the category of a derivative shareholder's action, is an action of the same character. The only favorable relief that could be allowed to plaintiff on the second claim would be a judgment for and in the name of the defendant Fairplay. Nevertheless, that corporation which is alleged to have made the fraudulent conveyance in the first claim and which is the only one in whose favor there can be a recovery on the second claim is not now within the jurisdiction of this court.

In *Koster, supra,* 330 U.S. at 531, 67 S.Ct. at 835, the Supreme Court observed that one of the named defendants had not been served with process; that the plaintiff was vague as to when such defendant would be served; and that such defendant's "absence from the case * * makes remedy in New York inadequate, if not impossible * * *." The Supreme Court also held: "To that extent, it makes it inappropriate for a court in New York to adjudicate some closely related issues, deciding plaintiff's grievances piecemeal."

■ Personal jurisdiction is of the essence of any judgment purporting to be rendered in equity and good conscience. Lack of personal jurisdiction is a matter that can be raised or suggested by any party. If not, the court may do so of its own motion. McShan v. Sherrill, 283 F.2d 462, 464 (9th Cir. 1960).

■ The void of jurisdiction over the person of an indispensable party is not filled by the formality of merely naming it as a defendant. Such procedure is not joinder of a party needed for a just and proper adjudication. Upon the great weight of authority Fairplay is an indispensable party to this action. 3B Moore's Federal Practice ¶ 23.1.21 [1] (2d ed. 1969) says:

"The question often arises as to whether the federal courts have jurisdiction to hear a shareholder's suit. The reason for the frequency of this problem lies in the fact that the corporation * * * must be made a defendant, since it is indispensable, even though the plaintiff sues upon a right which belongs to the corporation. The basis of such a requirement is the desire of courts to have the decree, whether favorable or adverse to the plaintiff, run to the benefit of the corporation or be binding upon it."

Professor Moore cites *Koster, supra,* in which the majority opinion was rendered in 1947 by Mr. Justice Jackson, and Greenberg v. Giannini, 140 F.2d 550, 152 A.L.R. 966 (2d Cir. 1944), in which the opinion was rendered by Judge Learned Hand. The decision in the latter is cited in the former. In *Koster, supra,* 330 U.S. at 523, n. 2, 67 S.Ct. at 831, Mr. Justice Jackson said: "Since the corporation is an indispensable party, Davenport v. Dows, 18 Wall. 626, 21 L.Ed. 938, it must be only the chance stockholder's suit which can be maintained at the stockholder's residence."

In *Greenberg, supra,* 140 F.2d at 554, Judge Learned Hand said:

"As for Giannini's motions to dismiss the complaints in both actions, it has been settled law for over a century (Cunningham v. Pell, 5 Paige, N.Y., 607) that the wronged corporation is an indispensable party to a shareholder's action. City of Davenport v. Dows, 18 Wall. 626, 21 L.Ed. 938; Baltimore & Ohio R. Co. v. City of Parkersburg, 268 U.S. 35, 45 S.Ct. 382, 69 L.Ed. 834; Philipbar v. Derby, supra, [2 Cir.] 85 F.2d 27. Cf. Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145. It is hornbook law that the claim is the corporation's, and for that reason the delinquent directors will not be protected by any judgment which does not conclude the corporation. If they succeed in defeating the action, other shareholders may bring another; if the recovery is too little, the same thing is possible. Therefore, as soon as the service of process upon the Transamerica Corporation was set aside in the case at bar, it became

inevitable that the complaints against Giannini should be dismissed."

Service of process in a stockholder's derivative action is provided for in 28 U.S.C. § 1695 as follows: "Process in a stockholder's action in behalf of his corporation may be served upon such corporation in any district where it is organized or licensed to do business or is doing business." Fairplay was not organized in any district of the United States. There is no suggestion that it is licensed to do business or that it is doing business in any district of the United States.

The recent case of Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), involved the joinder of parties pursuant to Rule 19 FRCP. The Supreme Court reversed the lower court's decision because it did not "follow the provision of Rule 19 * * * that findings of 'indispensability' must be based on stated pragmatic considerations." Id. at 106–107, 88 S.Ct. at 736.

In Provident the party who was not joined in the tort action was one Dutcher. He was "subject to service of process." Because he was a resident of the same state as the plaintiffs, they did not join him as a defendant in order to preserve diversity jurisdiction. Dutcher was within the class of persons specified in Rule 19(a) to whom the rule applies. Fairplay is not a resident of the same state as the plaintiff. Joinder of it does not destroy diversity or any other kind of jurisdiction of this court. Fairplay does not appear to be subject to service of process on the second claim. It may, however, be subject thereto on the first claim by recourse to the "long arm" statute for service of process under the law of the State of New York. Cf. Rule 4(d) (7) FRCP.

Rule 19 and the Provident case do not purport to abrogate the doctrine of forum non conveniens. However, even if they were inapplicable here, we should heed the latter's mandate against a dis-. missal for nonjoinder determined by formulaic approaches to the concept of indispensability. Accordingly, the four factors stated in Rule 19(b) and discussed in Provident will also be considered.

The first factor is to what extent a judgment rendered in Fairplay's absence might be prejudicial to Fairplay or to the defendant bank. A judgment rendered on the fraudulent conveyance claim, in the absence of Fairplay which allegedly made the fraudulent conveyance, would be prejudicial to both Fairplay and the defendant bank. A judgment rendered on the second claim would also be prejudicial. Not only is Fairplay not before the court, but its directors also have not been joined. In the absence of its directors, under the rationale of Greenberg, supra, no judgment could be rendered on the second claim that would be binding upon either Fairplay or its directors.

The second factor is the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided. Our decision will embrace "other measures." There seems to be no other way by which such prejudice can be lessened or avoided.

The third factor is whether a judgment rendered in Fairplay's absence will be adequate. The defendant Fairplay's "absence from the case * * * makes remedy in New York inadequate, if not impossible * * *." See Koster, supra, 330 U.S. at 531, 67 S.Ct. at 835. On the second and derivative claim it might be adequate if rendered in favor of Fairplay. However, it is incongruous to contemplate in equity and good conscience a judgment in favor of an absent party defendant over whom the court has no jurisdiction. If Fairplay and its directors are the frauds plaintiff asserts them to be, they may be intentionally absenting themselves from this jurisdiction to let a large judgment be procured in its name against the solvent defendant bank in order to thus unjustly enrich Fairplay. These considerations also re-

late to the first and second factors discussed above.

The fourth factor is whether the plaintiff will have an adequate remedy if the action is dismissed. The plaintiff has already begun his action in England. He does not claim his remedy there is less adequate than here. He agrees that the case substantially involves English as well as American law. Either jurisdiction is as competent as the other to determine such law in that or any other combination of it.

No other pragmatic factors are present that have not been considered except a few on a much lower and less significant plane. They relate to the clash of the convenience or inconvenience of the parties. The plaintiff claims that it would be expensive to have to try his case in England. There is no means by which we can measure the relative cost of trying a case of this nature in England or here. It will also be expensive here. What the difference may be and in whose favor is not clear or certain. Be that as it may, it does not outweigh the fact that in equity and good conscience we ought not to proceed in the absence of defendant Fairplay.

In his affidavit plaintiff's attorney claims the right of access to witnesses and documents in this jurisdiction. He mentions several witnesses. He says that Kulukundis and his son live in New York. He admits, however, that Rappaport who was the recipient of the entire fund of $651,302 sought to be recovered lives in Switzerland although he says that Rappaport's attorney "is" in New York.

The directors and officers of Fairplay requested the opening of its account at the London office of the defendant bank. Copies of some of the papers upon which the account was opened are in the record. They include the resolutions of the Board of Directors of Fairplay. These papers were signed and the resolution certified by Henry D. Mathers, President and Chairman of the Board of Directors of Fairplay, and by George D.

Webb, its Secretary. Plaintiff's attorney refers to them as witnesses. Obviously they are both important witnesses. He admits that both of them live in Nova Scotia.

The New York branch of the Midland Bank was served with a sweeping subpoena for the production in the bankruptcy proceedings of the pertinent documents. In response to the subpoena, G. Bryan Grattan-Guiness, Sub-Manager of the New York branch of the Midland Bank, stated under oath that the New York branch is not in possession of any of the documents specified in the subpoena. To the best of his knowledge the New York branch has at no time been in possession of these documents, and these documents do not refer to transactions at any time had with the New York branch. Even if all of the original documents involved were present in this jurisdiction or were produced here upon a commission to take testimony in England, it would not outweigh the fact that in equity and good conscience we ought not to proceed in the absence of the defendant Fairplay.

Suffice it that in the calculus of pragmatic considerations, we have found nothing to fill the void of personal jurisdiction over Fairplay. Therefore, upon all the factors involved including those contained in Rule 19 it is concluded that as long as that void exists in equity and good conscience the action should not be tried in this forum. Nevertheless the case will not be dismissed forthwith. A solution consistent with practical and creative justice is stated below.

The defendant bank's motion to dismiss the complaint is denied. Its alternative motion to dismiss the action on the ground of *forum non conveniens* and for such other relief as the court may deem just and proper is disposed of as follows:

Plaintiff shall make written request upon Fairplay Tanker Corporation within a period of 30 days after the date hereof, to make a general appearance in

this action and the request shall be made in the name of the plaintiff as trustee in bankruptcy of the corporations named in the caption of this action. It shall be accompanied by a copy of the complaint and of this opinion. Such notice and enclosures shall be sent by mail addressed to the corporation at its last known place of business and an affidavit of mailing shall be filed.

If before the expiration of that time Fairplay Tanker Corporation voluntarily appears in this action or is duly served with process pursuant to any provision of Rule 4 FRCP which may be lawfully applicable to it, the action shall thence go forward accordingly. If not, after notice to the parties to the cause and to the shareholders pursuant to Rule 23.1 FRCP plaintiff must show cause why this action should not be dismissed on the ground of *forum non conveniens.* Final determination of the defendant bank's alternative motion is held in abeyance until these procedures have been accomplished.

The plaintiff's cross motion is denied without prejudice to renewal in the event that the court obtains personal jurisdiction over Fairplay Tanker Corporation.

These are orders. No settlements are necessary.