**In the Matter of UNISHOPS, INC., Debtor.**

**No. 71–B–1208.**

United States District Court,
S. D. New York.
March 4, 1974.

Judgment affirmed, 2 Cir., 494 F.2d 689.

Levin & Weintraub, New York City, for debtor.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Debtor and debtor in possession (hereinafter "Unishops") appealed to this Court from an order of Hon. Roy Babitt, Bankruptcy Judge, made February 6, 1974, denying its application to restrain all creditors of 13 so-called "first tier" operating subsidiaries and numerous "sub-subsidiaries" of Unishops (hereinafter collectively called "subsidiaries") from continuing with or instituting plenary actions in various state courts against subsidiaries to re-cover for goods sold and delivered, and services rendered, allegedly to the subsidiaries, prior to the filing of the petition by their parent Unishops.

The Bankruptcy Judge denied the application as a matter of law, holding that he lacked jurisdiction to grant at the instance of Unishops a stay of all state court proceedings, existing or contemplated against the subsidiaries.

Because of the admittedly drastic effect which denial of this relief will have upon the debtor's estate and affairs, the Bankruptcy Judge granted a temporary stay until this appeal could be heard.

On the argument of the appeal on February 28, 1974, this Court modified the stay so as to exclude therefrom actions against subsidiaries for goods sold or services rendered prior in time to the issuance of the "assumption letter" (see *infra* p. 427), but continued the stay as to all other actions, pending this decision.

The Bankruptcy Judge held that no evidentiary hearing was required, since he was denying the application as a matter of law and after assuming the truth of Unishops' allegations, and taking them in the most favorable light.

Accordingly, the sole question before us is whether the Bankruptcy Judge erred in so deciding as a matter of law, without an evidentiary hearing, that he lacked jurisdiction so to protect the interest of Unishops in its subsidiaries.

No proceedings have been commenced in this Court or elsewhere by any of the subsidiaries to obtain the benefit of any chapter of Title 11 of the United States Code. Their affairs, unlike that of the parent, have not been brought within the umbrella of protection granted by that statute to debtors and to general creditors.

We will summarize briefly what we consider to be the material facts. Apparently, these facts are not seriously disputed. It became clear on the oral argument before me that the Bankruptcy Judge was amply justified in treating the Unishops allegations as beyond dis-

pute, and there was no need for an evidentiary hearing.

Unishops, which filed its petition for an arrangement on November 30, 1973, and has since continued business as a debtor in possession, pursuant to an order of the Bankruptcy Judge, operated, through subsidiaries, several chains of discount stores, specialty stores and leased departments in retail stores. These included Bobbie Sue, Inc., a/k/a Famous Fashions; Perry's Shoes, Inc.; Unishops of Clarkins, Inc.; Nescott, Inc.; Teril Stationers, Inc.; Goldfine's, Inc.; Central Textile, Inc.; White Department Stores, Inc.; Unishops of Modell's Inc.; Unishops of Stars, Inc.; J. Z. Sales Corp.; Unishops of Giant Automotive, Inc.; and Uniquip, Inc.

Through its subsidiaries, it was engaged in the sale at retail of various articles of clothing, cosmetics and paper goods. These activities included 39 free standing retail, so-called "discount" stores, 37 specialty stores, and 281 leased departments in stores owned by others.

In May, 1973 Unishops agreed with certain financial institutions [hereinafter the "banks"], at their behest, that all merchandise intended for public sale by the subsidiaries would, in the future, be purchased by the parent, Unishops, Inc. Prior to that time, the various subsidiaries had purchased their inventory for public sale from their respective trade suppliers, each upon its own faith and credit. The obvious purpose of this change in procedure was to give the banks an "edge" in the event of fiscal collapse of the parent, which in fact did occur less than six months later.

At the behest of the banks, each of Unishops' subsidiaries issued a disingenuous "assumption letter" dated June 1, 1973. The letter, signed by each applicable operating subsidiary, and sent to all its suppliers on the subsidiary's letterhead, was dated June 1, 1973 and read in relevant part as follows:

"TO ALL VENDORS:

We are pleased to report that Unishops, Inc. recently entered into a loan agreement with a number of lending institutions.

Please be advised that pursuant to the new agreement all orders now in your possession or hereafter given to you shall be considered given by the parent corporation, Unishops, Inc. and the parent corporation hereby assumes liability for the payment of all invoices. All future orders that we submit to you will be in the name of Unishops, Inc. Please address your invoices to Unishops, Inc., at the address shown on this letterhead.

Please accept our thanks for your past cooperation and we look forward to continued good relations with you."

These form letters had the following legend below the signature of the officer of the operating subsidiary:

"UNISHOPS, INC. hereby accepts liability for all outstanding orders and invoices.

UNISHOPS, INC.

By [Herbert I. Wexler]
President"

We need not comment further on this letter except to state that as to goods ordered, but not yet shipped, the most the letter could effect, unilaterally, was either repudiation, and an anticipatory breach of contract by the subsidiary, or the addition of a guarantor. As to suppliers who actually received the letter and continued to accept orders (and as might be expected, some vendors deny receipt of the assumption letter), it may be construed to mean that all future purchases were actually made for the account of the parent and on the parent's credit.

To the extent that the letter has validity, it would be obvious that the operating subsidiaries have a full and valid legal defense to any action for goods sold and delivered maintained against them in the state courts, and the Bankruptcy Judge properly concluded that such defense would be sustained after a trial. To the extent that the letter merely adds a guarantor to a pre-existing contractual obligation owed by an operating subsidi-

ary, it is obvious that the vendors will wish to pursue the subsidiaries, most of which are apparently solvent.

At the time of filing, Unishops or its operating subsidiaries had in excess of fifty-two million dollars in merchandise inventory. Most of it had been purchased subsequent to June 1st, the date of issuance of the letter. Much of it had been delivered to the debtor's premises for warehousing, breaking of bulk, and distribution to the subsidiaries. Some merchandise was drop-shipped to the subsidiaries.

Debtor contends that in each case, the liability for these purchases is not that of the subsidiaries, but of the parent. This is, of course, an issue which must be determined after a trial, following a judicial construction of the effect of the assumption letter, and also upon proof of its receipt. Presumably, each creditor's action will be affected by different operative facts.

Unishops alleges in support of its application that (¶ 8 of Application dated December 12, 1973):

> "8. It is imperative to the orderly continuity of applicant's business that all creditors be restrained and enjoined from continuing with or instituting actions or proceedings against not only the debtor and debtor in possession but all subsidiaries and subsubsidiaries of the debtor and debtor in possession, otherwise creditors, by the multiplicity of suits that are likely to be commenced, will decimate and fragment the efforts of the debtor herein to rehabilitate itself in these proceedings, will frustrate the entire purpose of these proceedings and will jeopardize the very real and substantial assets which are available for all creditors and based upon which a viable arrangement will ultimately be formulated. Applicant asserts that said creditors have no basis in law or fact for their contention that any corporation other than the debtor herein is liable to them, but it would be impossible to defend law suits all over

the United States to establish the point. The debtor and all its property wheresoever located are before and within the exclusive jurisdiction of this court which, applicant asserts, is the only proper forum where this issue (if it is an issue) should be determined."

As was conceded by Unishops on argument before me, the operating subsidiaries are unable or unwilling to seek the protection of this court and to file for a consolidated arrangement proceeding. This is so for a very practical reason; they hold leases of free standing stores or space in shopping centers, or have concession agreements with merchants having most of the attributes of a lease. The instruments effecting these rights include that perennial boilerplate clause which imposes a forfeiture on the tenant who dares to seek the protection of the bankruptcy act. The forfeiture usually purports to be self-effecting, wholly without regard to whether the landlord has actually been impeded, or whether there has been default in rent or a breach of any other covenant of the lease. Such shotgun clauses in leases ought to be against public policy, at least where the landlord is not affected by a mere filing; whether the remedy is for Congress or for the courts to provide is presently pending decision in this Circuit (see In Re Queens Boulevard Wine & Liquor Corp., d/b/a Gold Star Wine & Liquor, docket No. 73–1512, E.D.N.Y., argued on November 29, 1973).

The subsidiaries are clearly not sham, nor can movant so allege reasonably. They were free standing, separately operating corporations, doing business separately on their own credit, at least until the bank induced assumption letter was issued. That they reported their operations on a consolidated basis, or that they obtained warehousing and trans-shipment services and other benefits from the parent is certainly beside the point. The operating subsidiaries are not under the umbrella of our jurisdiction, and they do not choose to come thereunder by filing a petition under

any chapter of the Bankruptcy Act. The debtor in possession may not pierce its own corporate veil[s], nor will this Court do so except under the most compelling circumstances, Maule Industries v. Gerstel, 232 F.2d 294, 298 (5th Cir. 1956).

■ Simply because persons properly creditors of the parent may be minded to present their claims in state court against its subsidiaries, (claims which are merely colorable, or with respect to which the subsidiary may have a full and complete defense because the goods were in fact sold on the credit of the parent, and not the subsidiary) is not a basis for this Court to reach out and inject itself into the business of the state courts, which are being asked to determine actions between operating subsidiaries which are not bankrupt, and persons claiming, albeit perhaps falsely, to be creditors thereof.

Perhaps it is reasonable and appropriate, in the effectuation of the responsibilities placed on this Court by the Bankruptcy Act, that the Court reach out and protect viable operating subsidiaries of a bankrupt, or of a petitioner for an arrangement. Such is not the state of the case law, nor is there any statutory authority.

We believe the Bankruptcy Judge properly relied on In Re Beck Industries, 479 F.2d 410 (2d Cir.), cert. denied, 414 U.S. 858, 94 S.Ct. 163, 38 L. Ed.2d 108 (1973), wherein the Court of Appeals wrote (p. 415):

"In determining whether Subsidiary or its assets constitute 'property' of the debtor within the meaning of the Act, we must note that Beck's sole interest in Subsidiary is its ownership of Subsidiary's outstanding stock. Ownership of all of the outstanding stock of a corporation, however, is not the equivalent of ownership of the subsidiary's property or assets. See In Re Gobel, Inc., 80 F.2d 849, 851 (2d Cir. 1936); Klein v. Board of Tax Supervisors, 282 U.S. 19, 23–24, 51 S.

Ct. 15, 75 L.Ed. 140 (1930); Liman v. Midland Bank Ltd., 309 F.Supp. 163, 167 (S.D.N.Y.1970). Even though the value of the subsidiary's outstanding shares owned by the debtor may be directly affected by the subsidiary's disputes with third parties, 'Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate.' Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949)."

As was the Bankruptcy Judge, we are mindful of the distinct likelihood that trade creditors of Unishops claiming wrongfully to be creditors of the subsidiaries, will overburden the subsidiaries with a plethora of litigation in many different courts, causing serious and immediate adverse effects upon the debtor in possession. This avalanche of litigation may, by its very existence prevent the approval and implementation of a viable Plan under Chapter XI to reorganize and save the parent. It may threaten financial disaster for Unishops and its subsidiaries.

But for the jurisdictional difficulties, we think it clear on the undisputed facts of this case that the Bankruptcy Judge would grant some limited injunctive relief.

Accordingly, we are reluctant to see the subject matter of the litigation, or the assets of Unishops or its subsidiaries dissipated in litigation before further appellate review of our affirmance may be had.

The decision of the Bankruptcy Judge is in all respects affirmed. The limited stay imposed by this Court at the hearing on February 28, 1974 is hereby continued for an additional period of 10 days from date hereof, within which time the debtor in possession, if so advised, may apply to the Court of Appeals for a further stay, or for an expedited hearing of an appeal, or both.

So ordered.