Paul C. McCANN and Washington International Materials Corporation, a Delaware Corporation

v.

Jeffrey R. PIERSON, American Carbon Seals, Inc., a Pennsylvania Corporation, R & R Equity, Inc., and Gulf Oil Corporation, a Pennsylvania Corporation trading as Gulf International Trading Company, a Division of Gulf Oil Corporation.

Civ. A. No. 77–3593.

United States District Court, E. D. Pennsylvania.

March 15, 1978.

P. W. Kittredge, Alan M. Lerner, Joseph M. Donley, Philadelphia, Pa., for plaintiff.

M. M. Baylson, Philadelphia, Pa., Thomas P. Stitt, Easton, Pa., James E. Farrell, Jr., J. J. Fitzpatrick, Jr., Bala-Cynwyd, Pa., for defendants.

## MEMORANDUM

TROUTMAN, District Judge.

Plaintiff, Paul C. McCann (McCann) and defendant, Jeffrey R. Pierson (Pierson) were, at one time, business partners whose association and resulting business ventures have produced this litigation involving certain additional persons or entities.

Before the Court are the motions of defendants, Jeffrey R. Pierson, American Carbon Seals, Inc., and R & R Equity, Inc. (referred to as the "Pierson Defendants") to dismiss the amended complaint pursuant to Rule 12(b)(6) and Rule 12(b)(7), Federal Rules of Civil Procedure. The 12(b)(6) motion is based on contentions that the amended complaint is, at least in part, derivative in nature, fails to comply with Rule 23.1, governing derivative suits, and that indispensable parties for a derivative suit are not named under Rule 19. The 12(b)(7) motion alleges failure to join a party under Rule 19, based on the contention that certain parties are indispensable to the adjudication of the claims against the Pierson defendants. For the purposes of these mo-

tions well-pleaded factual allegations contained in the amended complaint are accepted as true.

Plaintiffs, Paul C. McCann and Washington International Materials Corporation (WIMCO) allege that McCann and Pierson entered into a partnership "for the purpose of importing and selling Korean mined amorphous graphite in the United States". It is further alleged that Intertec, a Panamanian corporation, was established to act on behalf of the partnership but was later liquidated and succeeded by another corporation, Interkoryo, and its shipping agent, Inveraiones Abadesh, both Panamanian corporations. Neither McCann nor Pierson were or are officers, directors, or shareholders of Interkoryo or Inveraiones Abadesh, but are described as beneficial owners thereof. Subsequently, McCann and Pierson, as partners, entered into a contract with a Korean company to purchase graphite and distribute it in the United States. This contract became the principal asset of the partnership.

It is alleged that Interkoryo consummated five separate transactions involving Korean graphite. It purchased the graphite from Korea, held title to the graphite, resold the graphite to others, received funds, transported the graphite from Korea to the users, and generally held partnership assets. Thus, Interkoryo was a full functioning entity which received almost $1 million in proceeds from the sale of graphite and apparently holds or controls substantial sums of money, in that the amounts allegedly paid out by Interkoryo are substantially less than the amount Interkoryo is alleged to have received from graphite purchasers. Neither Interkoryo nor the officers, directors and shareholders are named as parties or otherwise. It appears from the complaint that the officers are Panamanians.

The amended complaint contains eight separate claims for relief, the first three of which are against the Pierson defendants and the five remaining are against another defendant, Gulf International Trading Company, a division of Gulf Oil Corporation. The three claims against the Pierson defendants may be summarized as follows: The first seeks an accounting from Pierson on all transactions under the contract with the Korean graphite producer, alleging a breach of the partnership agreement. The second claim seeks an accounting from American Carbon Seals Corp. and R & R Equity, alleged to be "alter egos" of Pierson, which improperly received moneys from Pierson actually due to McCann. The third claim is against Pierson, and seeks reimbursement of WIMCO and McCann, for funds allegedly diverted from the partnership by Pierson.

■ The principal basis for the motion to dismiss is the allegation, under Rule 12(b)(7) of a failure to join parties under Rule 19, "Joinder of Persons Needed for Just Adjudication". Rule 19 avoids formalistic considerations and uses pragmatic and practical considerations to determine whether a party is indispensable. *Provident Tradesmens Bank v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Rule 19(a) provides as follows:

"(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."

We believe that Interkoryo, and its officers or directors, are necessary to the complete relief sought by plaintiffs. The amended complaint clearly states that Interkoryo is an independent entity, which functioned in various substantive matters, on behalf of the alleged partnership as an independent corporate agent of the partnership. This is evident from the fact that the defendants, American Carbon Seals and R & R Equity, are alleged to have been "alter egos" of defendant Pierson whereas there is no such allegation that Interkoryo was an alter ego of either plaintiff McCann or defendant Pierson. There is also no allegation that Pierson controlled the actions of Interkoryo. The amended complaint alleges only that defendant Pierson because of his superior knowledge would take the responsibility of managing the partnership's operations in the United States. It is clear that Interkoryo's functions would primarily concern activities and transactions outside the United States in that it would purchase the graphite from Korea, make all arrangements for its resale, and handle title and all of the actual sale functions.

This suit is not a simple demand for money judgment in a specified amount. Rather, the relief requested is for a full accounting of all transactions under the agreement between the partners and the Korean graphite company. Such an accounting would be meaningless without the presence and accountability of Interkoryo. Interkoryo handled all the transactions, and only Interkoryo would know necessary details such as the cost of graphite, the expenses incurred, and what amount represented the net profit—because it is only the net profit that is to be shared between McCann and Pierson, as partners. To proceed without Interkoryo would be tantamount to ignoring its existence, which would be directly contrary to the allegations treating Interkoryo as an active corporate agent for the partnership. The existence of a corporation established to conduct the partnership's business cannot be disregarded. Assuming an accounting were to be awarded by the court, substantial disputes between McCann and Pierson over accounting practices, expenses, etc., may reasonably be anticipated. These disputes could not be resolved unless Interkoryo and the individuals who directed its operations and affairs were parties to the law suit and subject to the Court's jurisdiction. *Gentry v. Smith,* 487 F.2d 571 (5th Cir. 1973); *Tucker v. National Linen Service Corp.,* 200 F.2d 858 (5th Cir.) *cert. den.* 346 U.S. 817, 74 S.Ct. 28, 98 L.Ed. 343 (1953).

We recognize that the description of a "persons to be joined if feasible" under Rule 19(a)(1) is alternative to Rule 19(a)(2), but we believe that Interkoryo fits the description under both parts of the rule, and under Rule 19(a)(2)(i), we must determine whether Interkoryo claims an interest relating to the subject-matter of the action and whether it is so situated that the disposition of the action in its absence may as a practical matter impede its ability to protect that interest. With Interkoryo at the vortex of all of the transactions that are alleged to form the basis of the amended complaint, it would be extremely prejudicial to Interkoryo's interests and that of its officers, and particularly its or their claims to all or part of any remaining partnership assets in its possession, were those assets to be distributed without its or their presence in this litigation.

Furthermore, under Rule 19(a)(2)(ii), we believe that Interkoryo has an interest relating to the subject-matter of this action and the disposition of this case in its absence may leave present parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations, by reason of Interkoryo's apparent interest. The Pierson defendants claim that a Panamanian court might render them liable for an accounting, and that it could reach a result different from this Court, in an accounting for the same funds. Thus, it is possible for the Pierson defendants (or Interkoryo or its officers) to be liable in different amounts in Panamanian and United States courts for the same funds.

Plaintiffs' response emphasizes the personal nature of this dispute between Pier-

son and McCann, and cites a number of cases, which are distinguishable because they did not involve an absent party actually transacting business for the litigating parties and handling or holding funds belonging to one or more of the parties to the lawsuit. We think this is an important fact distinguishing this case from *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235 (E.D.Va., 1977) heavily relied on by plaintiffs.

 Having concluded that Interkoryo and its officers and/or directors are persons described in Rule 19(a), we turn to Rule 19(b), to determine "whether in equity in good conscience the action should proceed among the parties * * * or * * * be dismissed, the absent person being * * regarded as indispensable".

Initially, we note that the amended complaint fails to state, as it could have under Rule 19(c), the reasons why Interkoryo and its officers or directors were not joined. Plaintiffs, in responding to the motion to dismiss, make no comment concerning the non-joinder of Interkoryo, or its officers. It is proper to assume, given that Interkoryo and its officers are apparently Panamanian, that they are not subject to service of process. See *Liman v. Midland Bank Limited*, 309 F.Supp. 163 (S.D.N.Y.1970).

Rule 19(b) states as follows:

"(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

Considering the four factors under Rule 19(b) we believe that Interkoryo is an indispensable party, and the action should be dismissed. As previously noted, we believe that a judgment rendered in the absence of Interkoryo "might be prejudicial" to Interkoryo, its officers and directors, or to the Pierson defendants, or both.

We have considered whether there could be any protective provisions in the judgment, or in the shaping of relief to lessen or avoid prejudice—and we can think of none which would be assuredly effective within the jurisdiction of this Court. We also note that the plaintiffs, in responding to the motion to dismiss, have not suggested any such possibility. One of the reasons for this conclusion is that the focus of this case is on transactions that took place outside the United States, funds that were generated, received and handled outside the United States, and consequently still held, outside the United States—and it does not appear possible for this Court to effectively exert jurisdiction over such funds. Thus any accounting may be a nullity, in addition to being unfair to Interkoryo or the Pierson defendants.

The third factor stated in Rule 19(b) is whether a judgment rendered in the absence of Interkoryo will be adequate. The Supreme Court in *Provident Bank, supra*, 390 U.S. at 111, 88 S.Ct. at 739, stated that this referred to the "public stake in settling disputes by wholes, whenever possible, * * * ". For the reasons stated it is evident that an accounting ordered by this Court could not be enforced, would not be binding on Panamanian courts, may subject the parties to contrary or differing obligations in two separate jurisdictions, and would not necessarily resolve the dispute between the parties.

The fourth factor stated, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder, is most troublesome and gives us grave concern because it appears that the plaintiffs cannot bring an action in a United States

Court to secure the relief requested. Our concern leads us directly to the question as to how and why these parties appear to be without relief in a court of the United States. We must consider the equities of the parties and the circumstances. It is clear from the amended complaint that the parties themselves chose, for whatever reasons, to do business by and through a Panamanian corporation or corporations, with Panamanian officers and/or directors. Therefore, it does not seem unjust to require them to first utilize Panamanian courts, which can adjudicate their respective rights and liabilities as the beneficial owners of the shares of the corporation, secure an accounting from Interkoryo, and allocate funds still in Interkoryo's possession. Accordingly, the motion to dismiss pursuant to Rule 12(b)(7) will be granted.

In view of our disposition of the motion to dismiss under Rule 12(b)(7), we find it unnecessary to consider the motion to dismiss under Rule 12(b)(6), wherein it is contended that the complaint and amended complaint are at least in part derivative in nature.